UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.                                            CRIMINAL ACTION NO. 3:21CR31-BJB

JOHN F. JOHNSON                                                                 DEFENDANT

## UNITED STATES PRETRIAL MEMORANDUM

The United States files this pretrial memorandum on February 15, 2022 for the currently scheduled for April 25, 2022 in Louisville, Kentucky.

### A.   STATUTES INVOVED AND ELEMENTS OF OFFENSES

**18 U.S.C. 111 (Assaulting, Resisting or Impeding Certain Officers or Employees) (Count 1).**

1. Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes;
2. With any person designated in section 1114 [as a federal officer]; and
3. While engaged in or on account of the performance of official duties.

**18 U.S.C. 924(c) (Using, Carrying, or Possessing a Firearm During a and in Relation to a Crim of Violence) (Count 2).**

1. The defendant committed the elements of a crime of violence or drug trafficking crime prosecutable in federal court; and
2. The defendant knowingly used, carried or possessed a firearm;
3. The use or carrying of the firearm was during and in relation to, or the possession of the firearm was in furtherance of, the defendant's crime of violence[1] or drug trafficking crime.

---

[1] Defendant's conviction for forcibly assaulting a federal law-enforcement officer was categorically a "crime of violence" that supported his conviction for using a firearm in furtherance of a crime of violence; even if defendant did not come into physical contact with the officers at all, the assault statute had as an element the use or attempted use of violent force, that is, force capable of causing physical pain or injury to another person, and a threat or display of physical aggression sufficient to inspire fear of pain, bodily harm, or death constituted the threatened use of physical force.  United States v. Rafidi, 829 F.3d 437, (6th Cir. 2016)

### B.  STATEMENTS OF UNDISPUTED AND DISPUTED FACTS

### SUMMARY OF FACTS

On the evening of September 4, 2020, John F. Johnson, a/k/a Grandmaster Jay, forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered federally deputized task force officers while they were engaged in or on account of the performance of official duties, when Johnson aimed a rifle at them.  Johnson brandished an AR platform rifle and tactical flashlight at two federally deputized Task Force Officers (TFO), FBI TFO S.C. and USSS TFO J.P.  Both are detectives with the Louisville Metropolitan Police Department (LMPD).

John F. Johnson traveled to Louisville on July 25, 2020 and again on September 4, 2020.  Both prior to and after the July 25, march of his militia conducted by Johnson, he was instructed by LMPD that police would be on roofs and to not point weapons at the roofs of building where police were stationed.  Johnson had those same conversations with law enforcement prior to the September 2020 visit to Louisville, Kentucky for a planned protest at Churchill Downs on September 5, 2020.  Even with those warnings, on September 4, 2020, Johnson aimed his rifle at a roof top on a government building in downtown Louisville and with multiple police and federal task for officers.  Johnson was later arrested and interviewed and said he though kids with paintball guns were up there.

Prior to his arrival on September 4, 2020, Johnson had issued public statements evidencing his intent to violently harm, intimidate, and interfere with law enforcement.  The following are excerpts of statements issued by Johnson reviewed by the FBI and shared with agents and task force officers providing security around Johnson's September 4, 2020 visit on the eve of Kentucky Derby rescheduled due to corona virus concerns:

**ASSAULT & HARM TO LAW ENFORCEMENT STATEMENTS**
**NFAC_MESSAGE_TO_MINNEAPOLIS**

Johnson starts the video by addressing the Mayor of Minneapolis.

Around 00:50 mark – Johnson is making threats to specific law enforcement officers involved in the Minneapolis incident. "And that motherfucker who had his knee on his neck we coming for you. I'll say it publicly, them other ones the little fat one that stood around with his arms folded, we coming for you. We coming to see you. Oh, oh, oh, y'all didn't think it was gonna go this way, we coming for your city. Oh, we don't give a fuck about your gun laws."

Around 01:15 mark – Johnson explains how to join NFAC. "All you have to do is be suited and booted and packed and strapped and not afraid to bust."

Around 02:38 mark – Johnson talks about Minneapolis contacting Georgia because NFAC was marched there and is making demands on what he wants Minneapolis to do with the officers involved. "We ain't coming to march and we ain't coming to talking."

Around 05:05 mark – "Until we start putting a few of them in the grave and until we start sending they ass to the hospital until we start burning up they shit until we start doing shit to they women and children like they doing to ours they are not gonna back off of us."

Around 05:45 mark – "Bring all that shit you bought from the government, bring all that militarized shit that y'all got from the MRAT (?) program, bring all that shit and let's see who got some shit for real." "This aint got nothing to do with color. This right here got to do with people in authority abusing the people they have authority over. Now it's time for the people who don't have authority to hit yo ass back, knock you back a couple steps and make you think about it."

Around 10:59 mark – "like Malcom said be courteous and respectful but when they put they hands on you send they ass to the morgue or the hospital and right now the hospitals is full."

Around 12:00 mark – Johnson tells his viewers to "bring your shit, bring what you got" and "there's more of us then there are of them." He addresses law enforcement and says "if you really want to have the worst day in US history, if you really want to see what it's like, to all the shit you carry, what it's like when they know how to shoot back, if you really want it like that we'll bring it to you."

Around 13:25 mark – "I told you the next time we show up you was gonna hear us before you saw us."

Around 15:54 mark – "If you join NFAC and we find out you're working for the other side, we will kill you."

**NFAC_MESSAGE_TO_MINNEAPOLIS_PART_2**

Johnson starts the video wearing a mask and talking about the anger inside of everyone.

Around 04:44 mark – Johnson says "we will react anyway we choose and see fit. We don't care about your laws, we don't care about anything you set up because it does not benefit us."

Around 07:25 mark – "I'm not afraid to tell y'all to tear this motherfucker up and I'll be right out there with you tearing shit up."

Around 09:40 mark – "Going forward you kill us we gonna kill you, point fucking blank. If we can't get to you, we'll go after your family members. If we can't get them, we're gonna go after your church members. If we can't get them, we're gonna go after your co-workers and if we can't get them, fuck it, we'll just go after anybody."

Around 12:05 mark – "I went to the gun store to make myself feel good. Picked up a couple more toys for myself. Picked up something cute that I could hand to a sista and say "shoot that motherfucker for me".

Around 15:45 mark – Johnson talks about how they showed up to Bryant's (?) house and how he hid in his car from the NFAC.

Around 16:48 mark – "We show up looking for some bodies to put in the ground."

Around 18:29 mark - "Unless you got those motherfuckers in the trunk of your car and you about to say Jay, I got these niggas I got them outside in the trunk. What you wanna do with em? Then you call me. Okay. If you call me and say Jay, I got I done went past the schools and scooped these niggas kids up. What you want me to wanna do with em? If you got the Mayor tied up with duck tape and a rope in the back of your SUV and say Jay I got this nigga. What you wanna do with it? Then you call me."

Around 19:29 mark – Johnson tells people to stop being afraid of their own impulses. "You wanna knock the shit out of somebody, knock the fuck out of them. You see 2/3 cops jumping on a motherfucker, jump on those motherfuckers."

Around 19:55 mark – "How you gonna go to jail when they unconscious", "Take the god damn body cameras off of em, take the motherfucking police car, flip that bitch over and set it on fire. Make your neighborhood a zone they can't come into."

Around 20:24 mark – Johnson talks about a white woman who was going to call the police and how she needed her ass whipped. Johnson states he keeps a few "sistas on deck for jobs just like that."

**GMJ SPEECH**

Around 06:12 mark – "we'll burn this bitch to the ground."

Around 07:10 mark – "The kind of help that put people in the hospital, put people in the ground, like they been doing to us. Cause that seems to be the only language they understand."

Around 07:45 mark – "I've got thousands and thousands of guns and people willing to use them"

Around 08:25 mark – "My people will defend themselves if attacked. We will not shoot you we will kill you."

Around 18:05 mark – he talks about who he has with him – "the gangs, hitters, and bangers too."

Around 26:30 mark – Johnson tells the NFAC to check the roof and assume the position – "I don't know who the fuck you are but you're about to get shot".

Around 34:00 mark – "we're going to burn this motherfucker down."

Around 37:31 – Johnson is talking about giving the city 4 weeks. He responds by quoting Malcolm X "you either going to the hospital or the morgue, last time I checked the hospitals were full."

**STONE MOUNTAIN FORMATION VIDEO**

Around 06:50 mark – Johnson advises individuals in NFAC that is someone points a weapon at them to kill them.

### SEPTEMBER 4, 2020 LOUSVILLE, KENTUCKY

On September 4, 2020, both TFOs, along with three other LMPD officers, were on top of the Old Louisville Jail building which houses, among other agencies, the Jefferson County Commonwealth Attorney's Office, the Jefferson County Grand Jury facilities, and LMPD components. September 4th was 2020 Oaks Day and the day before the Kentucky Derby. On September 4th, federal, state, and local law enforcement were positioned throughout Jefferson County to react to expected civil unrest aimed against the Kentucky Oaks and Kentucky Derby. At about 8:30 pm, Johnson, along with several members of NFAC, gathered on Armory Place

next to the Old Louisville Jail Building. Several officers, including the two TFOs, were in their LMPD offices located in the Old Louisville Building when they heard LMPD radio traffic about Johnson and NFAC members gathering on Armory Place adjacent to their building. They immediately deployed to the roof to observe Johnson and the NFAC members after hearing the radio traffic.

When the two TFOs and three LMPD officers arrived on the roof of the building they leaned over to observe Johnson's activities on Armory Place. TFO S.C. was the first to lean over the ledge. As soon as Johnson saw TFO S.C., and then the others, he brandished his AR platform rifle with a tactical flashlight at the roof line and swept the building multiple times. He also ordered other NFAC members form a protective wall in front of him as he swept the building with his AR platform rifle. After sweeping the building, Johnson and the NFAC members proceeded to Jefferson Square Park, which is located in front of the Old Louisville Jail building.

The FBI interviewed all the Officers and TFOs on the roof. They all advised that they identified the individual on Armory Place, who aimed the rifle at them, as being Johnson [they knew him by his aka "Grand Master Jay"] and the group as being NFAC members. Johnson and the NFAC members were observed by TFO J.P. and others on roof earlier in the day at G.G. Moore park and were driving the same vehicles and dressed in the same clothing. Additionally, all the Officers and TFOs were familiar with Johnson's appearance, mannerisms, and tactics due to NFAC's march in Louisville on July 25, 2020 and from them watching various online and social media videos posted by Johnson. The TFOs and officers were all aware that NFAC members carried loaded weapons. Especially since an NFAC member accidently shot another NFAC member during the July 25th march in Louisville. The NFAC members also made a

showing loading their firearms and Johnson made a number of pronouncements on social media that they were carrying loaded weapons.

Johnson had been warned about police and snipers being on roof tops on more than one occasion by Major Aubrey Gregory. He was warned by Maj. Gregory not to carry firearms loaded and an in a position that could readily fire known as the "high ready". Johnson and NFAC members previously traveled to Louisville on July 25, 2020, in order to conduct a NFAC march in protest of the Louisville Metro Police Department shooting of Breonna Taylor. Prior to that trip, Johnson, had participated in video conference calls with LMPD Major Gregory to coordinate the march. Major Gregory advised Johnson that officers would be on roof tops of surrounding buildings and Major Gregory admonished Johnson to not point weapons at the officers as it would be perceived as a threat. During these calls, Johnson advised Major Gregory that only NFAC members would be allowed in NFAC's march. After the march, several NFAC members including Johnson, had pointed rifles or held rifles inappropriately. Johnson was admonished by Gregory. On July 26, 2020, in a telephone call with Johnson, Major Gregory discussed NF AC members aiming rifles at law enforcement officers and told Johnson they were "lucky" there had not been a shooting incident between NF AC and LMPD.

In addition, prior to Johnson and NFAC's arrival in Louisville on September 4, 2020, additional coordination phone calls and video conferences occurred between Johnson, Major Gregory, and others were held. Again, Major Gregory advised Johnson that law enforcement officers would be on rooftops of buildings to include buildings in the area of Churchill Downs. Again Major Gregory admonished Johnson to not point weapons at the officers as it would be perceived as a threat by the officers.

A review of a YouTube video taken by a bystander on July 25, 2020, revealed at least

two members of NF AC calling out "SWAT" on the roof and "snipers" on the roof. This bystander was on the south side of W. Jefferson Street which is the street the NF AC members used to march to Louisville Metro Hall.

The FBI reviewed a YouTube video posted on or around September 5, 2020 by a user "Black Nation Building" found at link *https:llwww.youtube.com/watch?v=abu2F7y9h w* This video is taken on September 4, 2020, and begins shortly after Johnson's encounter with the Officers on the roof of the Jefferson County Grand Jury Building. Towards the end of the video, upon Johnson and the NF AC members return to their cars parked on Armory Place, an unidentified male can be seen and heard speaking about the parking garage [Louisville Gardens Parking Garage] to the south of the Jefferson County Grand Jury Building. The unidentified male is standing a few feet from Johnson and explains to the group twice that the parking garage next to them is higher than the roof of the Jefferson County Grand Jury Building. The unidentified male explains that "last time" he and other unknown individuals were able to enter the parking garage and look down on "these snipers".

All TFOs and officers were aware of Johnson's and NFAC's activities when they visited Louisville in July 2020 as well as their activities when they visited other cities. In addition, Johnson posted a number of threatening videos on social media in which he made statements intimidating to law enforcement and the public. He stated at one point was going to "burn the city down" before he came to Louisville in July. When Johnson's and NFAC's past activities an statements are put in context with Johnson's brandishing of the firearm on September 4, 2020, his actions were clearly meant to intimate and interfere and intimidate law enforcement.

Johnson served in the United States Army and qualified as an expert with the M16 rifle. The FBI test fired Johnson's rifle that he brandished on September 4, 2020 and determined that it

was a functioning rifle capable of firing a bullet. On December 3, 2020, FBI agents interviewed Johnson. During the interview, Johnson was asked about other individuals including himself pointing weapons in an unsafe manner at roof tops in downtown Louisville. Johnson was shown a photograph of himself pointing a weapon in an unsafe manner. In addition, he was shown a photograph of what was believed to be another member of NFAC pointing a weapon at the roof of the Hall of Justice adjacent to the Old Jail Building at another federal law enforcement officer. Johnson admitted that was not safe and claimed the person was not part of NFAC, although clearly the individual was involved in March. Johnson claimed, among other things, he had pointed his rifle with his light because he had heard there were people possibly kids with paintball guns on the roofs and they would fire paintball guns at you.

### C. A SEPARATE STATEMENT OF EACH UNRESOLVED SUBSTANTIVE ISSUE OF LAW, WITH DISCUSSION AND CITATIONS TO AUTHORITIES

*Certifications/Introduction of Exhibits*

Certifications complying with Rule 902 will be obtained for many of the documents provided in discovery. When such certifications are obtained, they will be provided to the defendants.

The process of laying the foundation for each exhibit with the proper witness, and then requesting permission to publish the authenticated exhibits to the jury, will prove to be extremely time consuming and distracting to the jury. In the interests of judicial economy, efficiency and clarity, the United States intends to display exhibits to the jury as the foundation is being laid for admitting those exhibits into evidence. It will make use of the electronic displays in the courtroom

to show the exhibits to the witness and jurors at the same time, and will properly lay the foundation for admission of the exhibits so that they may be sent to the jury room for the jury's deliberation.

*Fed.R.Evid. 801(d)(2) - Statements of John F. Johnson offered by Johnson*

The United States intends to introduce various statements made by Johnson. These statements are non-hearsay by definition because they are an opposing party's statement made in an individual or representative compacity. *See* Fed.R.Evid. 801(d)(2). Therefore, any statement a particular defendant made to another person may properly be used against that defendant and is not hearsay.

Should the defendants try to introduce other self-serving statements made to others, over and above the statements introduced by the United States, as well as statements made to other individuals that should be inadmissible when offered for the truth of the matter asserted. This would include videos of Johnson making statements.

The defendants' self-serving statements to others when offered for the truth of the matter asserted, are inadmissible hearsay. Under the Federal Rules of Evidence, such statements do not fall under any definition of non-hearsay or under any hearsay exception. *See United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014); *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses."); *United States. v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party... [T]he rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party.").

Further, the statements are not admissible under the "rule of completeness." The rule of completeness may "allow a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Parenteau*, 529 Fed. Appx. 532, 535 (6th Cir. 2013) (unpublished) (*citing United States v. Henderson*, 626 F.3d 326, 344 (6th Cir. 2010)). However, the rule of completeness only addresses an order of proof problem, enabling a party to present context at the time evidence is introduced rather than later in trial. The Sixth Circuit has explicitly found that the rule of completeness "is not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). In fact, the rule of completeness "does not outweigh the hearsay rules . . . [and] exculpatory hearsay may not come in solely on the basis of completeness." *United States v. Shaver*, 89 Fed. Appx. 529, *3 (6th Cir. 2004); *see also United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013) (*citing Costner* and affirming district court decision to exclude defendants' attempts to introduce their own allegedly exculpatory statements); *Parenteau* at 535 (the rule of completeness "does not allow a party to admit evidence that is otherwise inadmissible").

D. **A STATEMETN OF EVIDENTIARY ISSUES WHICH IT IS REASONABLY BELIEVED WILL BE RAISED AT TRIAL TOGETHER WITH CITATIONS TO THE FRE AND AUTHORITES IN SUPPORT OF POSITION TAKEN.**

None known at this time.

E. **STATE OF KNOWN OR REASONALY ANTICPATED POTENTIAL TRIAL PROBLEMS OR OTHER ISSUES WHICH MAY ASSIST THE COURT IN TRYING THE CASE.**

None known at this time.

F. **PROPOSED SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS WITH CITATIONS TO AUTHORITIES.**

## COUNT 1

The defendant is charged in count 1 with a violation of 18 U.S.C. section 111.

It's a Federal crime to forcibly assault, resist, oppose, impede, intimidate or interfere with a federal officer by using a deadly or dangerous weapon while the officer is engaged in the performance of his official duties.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant assaulted, resisted, opposed, impeded, intimidated or interfered the person described in the indictment;

(2) the person assaulted, resisted, opposed, impeded, intimidated or interfered was a Federal officer performing an official duty; and

(3) the Defendant used a deadly or dangerous weapon.

A "forcible assault" is an intentional threat or attempt to cause serious bodily injury when the ability to do so is apparent and immediate. It includes any intentional display of force that would cause a reasonable person to expect immediate and serious bodily harm or death.

The Government must prove beyond a reasonable doubt that the victim was a Federal officer performing an official duty and the Defendant forcibly assaulted the officer. Whether the Defendant knew at the time that the victim was a Federal officer carrying out an official duty does not matter.

But you can't find that a forcible assault occurred if you believe that the Defendant acted only on a reasonable good-faith belief that self-defense was necessary to protect against an assault by a private citizen, and you have a reasonable doubt that the Defendant knew that the victim was a Federal officer.

A Federal Bureau of Investigation Task Force Officer [name of agent] is a Federal officer and has the official duty to conduct investigations on behalf of the FBI including investigating John F. Johnson.

A "deadly or dangerous weapon" means any object that can cause death or present a danger of serious bodily injury. A weapon intended to cause death or present a danger of serious bodily injury but that fails to do so by reason of a defective component, still qualifies as a "deadly or dangerous weapon."

To show that such a weapon was "used," the Government must prove that the Defendant possessed the weapon and intentionally displayed it during the forcible assault.

Though a forcible assault requires an intentional threat or attempt to inflict serious bodily injury, the threat or attempt doesn't have to be carried out and the victim doesn't have to be injured.

Pattern Crim. Jury Instr. 11th Cir. OI O1.2 (2020)

## **COUNT 2**

Count 2 of the indictment charges the defendant with using or carrying a firearm during and in relation to a crime of violence.

For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

First: That the defendant committed the crime charged in Count 1. Forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with a federal officer by using a deadly or dangerous weapon while the officer is engaged in the performance of his official duties is a crime of violence which may be prosecuted in a court of the United States.

Second: That the defendant knowingly used or carried a firearm.

Third: That the use or carrying of the firearm was during and in relation to the crime charged in Count 1.

Now I will give you more detailed instructions on some of these terms.

To establish "use," the government must prove active employment of the firearm during and in relation to the crime charged in Count 1. "Active employment" means activities such as brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. "Use" also includes a person's reference to a firearm in his possession for the purpose of helping to commit the crime charged in Count 1. "Use" requires more than mere possession or storage.

"Carrying" a firearm includes carrying it on or about one's person. "Carrying" also includes knowingly possessing and conveying a firearm in a vehicle which the person accompanies including in the glove compartment or trunk.

The term "firearm" means any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, and any firearm muffler or firearm silencer, and any destructive device. The term firearm does not include an antique firearm. The term firearm includes starter guns. The firearm need not be loaded.

The term "during and in relation to" means that the firearm must have some purpose or effect with respect to the crime charged in Count 1; in other words, the firearm must facilitate or further, or have the potential of facilitating or furthering the crime charged in Count 1, and its presence or involvement cannot be the result of accident or coincidence.

The term "knowingly" means voluntarily and intentionally, and not because of mistake or accident.

The government need not prove that a particular firearm was used or carried during and in relation to the crime of violence.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any of these elements, then you must find the defendant not guilty of this charge.

Sixth Circuit Pattern Jury Instructions 12.03

**G. PROPOSED VOIR DIRE QUESTIONS**

1. This case was investigated by the Federal Bureau of Investigation and involved members of several law enforcement agencies, including LMPD. Has anyone had any contact, one way

or another, good or bad, with this or any other law enforcement agency? Has anyone had their credit card stolen that they know of?

2.     There will be local law enforcement and federal agents testifying in this case. Has anyone had a really good or bad experience with the United States Attorney's office, a police officer, or federal agent-even something like getting a traffic ticket you did not think you deserved-that you think would affect your ability to listen to his or her testimony and give it the same weight as any other witness?

3.     Has anyone served in law enforcement in his or her community or elsewhere? Family members?

4.     Have any of you ever been the victim of crime, or do you have a friend or family member who has been the victim crime? Has anyone had an elderly loved one be the victim of theft by a domestic worker or senior health care provider?

5.     You will likely hear testimony from several witnesses who are government employees. Can you fairly evaluate the credibility of government witnesses by considering all available evidence in determining if those witnesses are truthful in their testimony?

6.     At the end of the case the Court will instruct you on the elements of each offense. Those are the facts that the government must prove to you beyond a reasonable doubt. That is their burden. Will any of you hold the government to a different burden based on your expectations or require the government to prove to you something that is not in the instructions. In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else that you may be wondering about?

7.	Do all of you understand that you must set aside any personal feelings you may have about what the law ought to be if they conflict with the law contained in the Court's instructions? Is there anyone who thinks that they will not be able to follow the law that the Court gives you in the instructions?

8.	Are any of you employed by a law enforcement agency, or do you have friends or family members employed by law enforcement agencies?

9.	Have you or a close friend or family member ever been arrested or charged with a crime?

10.	Have you or a close friend or family member ever testified for a defendant in a criminal trial?

11.	Have you or a close friend or family member ever served time in a jail or prison?

12.	Have any of you ever served on a jury before?

13.	If you have served on a jury before, was it a civil or criminal case?

14.	If you have served on a criminal jury before, did you deliberate and reach a verdict in the case?

15.	If you did deliberate and reach a verdict, what was the verdict in the case?

16.	If you served on either a criminal or civil jury before, did you serve as the foreperson?

17.	If you served on either a criminal or civil jury before, is there anything about that experience that would prevent you from listening to the evidence in this case and bringing back a verdict based only on the evidence?

18.     Do you understand that in federal court, the punishment a defendant receives, if any, is to be imposed by the Court and your verdict must in no way be affected by your concern for what punishment would be proper?

19.     Does anyone work or have a family member that works for law enforcement?

19.     Do you understand that the duty of the Government is to prove guilt to the exclusion of a reasonable doubt, but the government is not required to prove guilt beyond all possible doubt?

20.     Do you understand that a defendant on trial is entitled to a presumption of innocence however, as with all presumptions, it may be overcome by competent evidence?

21.     Do you understand the law makes no difference between direct and circumstantial evidence and the weight to be given to it; that the burden is one of proof beyond reasonable doubt.  Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.  Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you conclude that it was raining.

22.     Are there any of you who, because of religious, philosophical, or any other reason, do not feel you could sit in judgment of these facts and vote to return a verdict of guilty regardless of the proof in this case?

23.     Are there any of you who have difficulty hearing, seeing, or sitting for long periods of time?

24. Are there any of you that have events in your life presently that would distract you or divert your attention from the testimony and evidence of this case?

        Respectfully submitted,

        MICHAEL A. BENNETT
        Acting United States Attorney

        s/Joshua Judd_____
        Joshua Judd
        Assistant U.S. Attorney
        717 West Broadway
        Louisville, Kentucky  40202
        PH:  (502) 582-5911

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 15, 2022, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel for defendants.

        s/Joshua Judd_____
        Joshua Judd
        Assistant U.S. Attorney