<u>**NOT RECOMMENDED FOR PUBLICATION**</u>

No. 22-6036

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 2, 2023
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) | |
| )| |
|    Plaintiff-Appellee,                     ) | |
| ) | ON APPEAL FROM THE UNITED |
| v.                                                        ) | STATES DISTRICT COURT FOR |
| ) | THE WESTERN DISTRICT OF |
| JOHN F. JOHNSON,                          ) | KENTUCKY |
| ) | |
|    Defendant-Appellant.                ) | |

<u>O R D E R</u>

Before:  GRIFFIN, WHITE, and MURPHY, Circuit Judges.

John F. Johnson appeals his convictions for assaulting a federal officer and brandishing a firearm during a crime of violence. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Johnson is the leader of the "Not Fucking Around Coalition" (NFAC), an African American militia that protests throughout the country. On the night of September 4, 2020, Johnson and several NFAC members went on a "recon" walk through downtown Louisville. Johnson was armed with an AR-15 rifle equipped with a tactical flashlight mounted under its barrel. Units from the Louisville Metro Police were stationed on rooftops of several civic buildings downtown, including the Grand Jury building. As the group walked by the Grand Jury building, Johnson pointed his rifle at the officers on the roof.

Johnson was later arrested and charged with assaulting a federal officer under 18 U.S.C. § 111(b) and for brandishing a firearm during a crime of violence under 18 U.S.C. § 924(c). He proceeded to trial, arguing that he was not aware that there were police on the roof, he did not intend to assault anyone, and he was acting in self-defense. During the trial, the government

introduced, among other evidence, (1) videos of a speech he gave at a July protest in Louisville and commentary he posted in May on YouTube after Minneapolis police killed George Floyd, and (2) photographs taken two weeks after the incident, which attempted to recreate the September incident from Johnson's approximate vantage point. The jury convicted Johnson of both counts, and the district court sentenced him to 86 months in prison.

Johnson moved for acquittal and a new trial, arguing that (1) § 111(b) was not a crime of violence to support a § 924(c) conviction, (2) the evidence did not support his conviction, (3) the district court erred in admitting the videos, (4) the district court erred in admitting the recreated crime-scene photos, and (5) the district court erred by failing to give an unanimity instruction. The district court denied these motions. *United States v. Johnson*, No. 3:21-cr-31-BJB, 2022 WL 16787860, at *12 (W.D. Ky. Nov. 8, 2022). Johnson now reiterates his arguments on appeal.

Johnson first argues that § 111(b) is not a crime of violence and therefore cannot be a predicate offense under § 924(c). He acknowledges that we held in *United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016), that § 111(b) is categorically a crime of violence, but he argues that it was wrongly decided. Yet he does not show that *Rafidi* was abrogated or overruled en banc or by the Supreme Court, so it remains binding here. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019).

Johnson next argues that the evidence could not sustain his convictions. "We review '*de novo* the sufficiency of the evidence to sustain a conviction.'" *United States v. Emmons*, 8 F.4th 454, 477 (6th Cir. 2021) (quoting *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009)). We look to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The government had to show that Johnson used a deadly weapon and "(1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties." *United States v. Milliron*, 984 F.3d 1188, 1194 (6th

Cir. 2021) (quoting *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001)); *see* 18 U.S.C. § 111(a), (b).

Johnson contends that he did not intend to assault anyone, stating that he coordinated safety protocols with police before the march and that he was not aware police would be on the Grand Jury building. He adds that he was concerned for his own safety, pointing to several death threats he received about his marches and his companion's warning that white supremacist militia members were on the roofs of buildings in Louisville. But § 111(b) is a general-intent statute requiring only that "a defendant 'knowingly' and 'voluntarily' use a deadly or dangerous weapon"; it "does not require a showing of bad purpose." *Milliron*, 984 F.3d at 1194-95 (cleaned up) (quoting *Kimes*, 246 F.3d at 807). Nor does it require that the defendant know that the victim is a federal officer. *United States v. Feola*, 420 U.S. 671, 684 (1975). Johnson argues that he only pointed his firearm at the roof to use the mounted flashlight, and that he quickly brought his rifle back down once he scanned the roof. Even if true, Johnson nevertheless knowingly pointed his firearm at the officers on the roof, so a reasonable juror could find that his conduct falls within the ambit of § 111. *See Milliron*, 984 F.3d at 1195.

Johnson also contends that he was not a threat to the officers. Without physical contact, "the element of force necessary for a conviction under § 111 may be shown by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." *Rafidi*, 829 F.3d at 446 (cleaned up) (quoting *United States v. Chambers*, 195 F.3d 274, 277 (6th Cir. 1999)). Officers stationed on the roof testified that they perceived Johnson acting in a manner that suggested he was manipulating his gun's safety mechanism, meaning Johnson could have fired his rifle once he pulled its trigger. They also testified that they sought cover after Johnson pointed his gun at them and shined his mounted flashlight on their faces. Based on this testimony, it was reasonable for the jury to conclude that Johnson displayed sufficient physical aggression toward the officers when he pointed his gun at them. *See id.* at 441-42, 446.

Johnson also argues that he had a good-faith belief that he needed to act in self-defense against assault by private citizens. He testified that he received several death threats, including

threats from a sitting Congressman; was informed that white supremacist militia had taken positions on roofs in Louisville during protests; and that protestors in Louisville had been shot from roofs with paintballs.  He added that he had not intended to go downtown in September, he was unfamiliar with downtown Louisville, and it was dark.  That said, the government presented evidence that Johnson knew that police would be on the rooftops of civic buildings.  It pointed to Johnson's prior safety coordination with police, in which police shared a map of downtown Louisville showing locations of police units, Johnson's earlier speech in Louisville where he acknowledged the police presence on the rooftops, and that Johnson and police coordinated his protest route for September.  The government and Johnson presented conflicting evidence on whether Johnson knew officers were on the roof of the Grand Jury building, but we may not reweigh the evidence when assessing a sufficiency claim.  *United States v. Hall*, 20 F.4th 1085, 1105 (6th Cir. 2022).  Viewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence for a rational jury to convict Johnson under § 111(b). Johnson's sufficiency challenge to his § 924(c) conviction hinges on his challenge to his predicate offense, so that challenge likewise fails.

Johnson next argues that he was unfairly prejudiced by the district court's admission of photographs of the recreated crime scene, contrary to Federal Rule of Evidence 403.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  This "test is strongly weighted toward admission," and when a defendant contends that the admitted evidence is unduly prejudicial, "we review the admitted evidence 'in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'"  *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004)).  Because Johnson did not object to the admission of the photographs, we review for plain error, which requires him to show obvious or clear error that affected his substantial rights

and the fairness, integrity, or public reputation of the proceedings. *See United States v. LaVictor*, 848 F.3d 428, 451 (6th Cir. 2017).

The photographs showed officers on the Grand Jury building from Johnson's position on the night of the September protest, which was relevant evidence that he knew the people on the roof were police. Johnson contends that photographs did not accurately reflect the visibility conditions or the positions of the police on the night of the march. But the jury was aware of these differences because Johnson cross-examined the investigating agent on this detail, and it watched video of the incident. As a result, the photographs were only marginally prejudicial, if at all. *See United States v. Johnson*, 106 F. App'x 461, 465 (6th Cir. 2004) (noting that the prejudicial effect of a recreated crime-scene photograph is mitigated by cross-examination). Therefore, the district court did not clearly err by admitting the photographs.

Johnson next argues that the district court erred by failing to give a specific unanimity instruction because there are multiple ways to violate § 111(b). There are three situations that warrant a specific unanimity instruction: "(1) the nature of the evidence is exceptionally complex or the alternative specifications are contradictory or only marginally related to each other; or (2) there is a variance between indictment and proof at trial; or (3) there is tangible indication of jury confusion." *United States v. Crump*, 65 F.4th 287, 298 (6th Cir. 2023) (quoting *United States v. Miller*, 734 F.3d 530, 538 (6th Cir. 2013)). Johnson did not object to the absence of a specific unanimity instruction at trial, so we review for plain error. *United States v. Steele*, 919 F.3d 965, 971 (6th Cir. 2019). "In the context of jury instructions, plain error review requires an inquiry of whether the jury instructions were 'so clearly wrong as to produce a grave miscarriage of justice.'" *Id.* (quoting *United States v. Eaton*, 784 F.3d 298, 307 (6th Cir. 2015)).

Johnson first contends that § 111(b) is exceptionally complex and that the government presented evidence about more than one modality (assaulting, resisting, opposing, etc.) of violating § 111. "A defendant charged with violating § 111 is not entitled to a specific unanimity instruction unless the defendant's conduct constituted 'two separate and distinct offenses,' not merely 'two phases of a single assault.'" *Kimes*, 246 F.3d at 810 (quoting *United States v. Hood*, 210 F.3d 660,

663 (6th Cir. 2000)). Johnson was charged for the single act of pointing his rifle at police on September 4. Moreover, a jury can reach different findings on "the 'several possible means the defendant used to commit an element of the crime,'" so long as it unanimously agrees that an element was met. *Crump*, 65 F.4th at 297-98 (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). The jury instructions in this case accurately reflected that there were several ways to commit a distinct element in § 111(a), and Johnson's argument here essentially mirrors the one we rejected in *Kimes*. *See* 246 F.3d at 810.

Johnson also argues there was a variance in the indictment because the words "forcibly assaulted" were not in the "to wit" clause for the § 111 charge. A variance occurs "when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Bradley*, 917 F.3d 493, 502 (6th Cir. 2019) (cleaned up) (quoting *United States v. Prince*, 214 F.3d 740, 756-57 (6th Cir. 2000)). Once a defendant shows an improper variance, he must then show that he was prejudiced as a result. *Id.* The indictment alleged that Johnson violated § 111 by pointing a rifle at an FBI task force officer, which is what the government showed at trial; he therefore has not shown a material difference in the charged and proven conduct. Nor was Johnson prejudiced by the alleged variance; he was aware of the government's factual theory and was able to prepare a defense in response to it. *See United States v. Matthews*, 31 F.4th 436, 455 (6th Cir. 2022). Johnson has therefore not shown that the trial court erred, plainly or otherwise, when it did not give a specific unanimity instruction.

Johnson lastly argues that the district court erred by admitting two types of "prior bad acts" evidence: videos of a speech he gave at Louisville City Hall in July 2020, and statements about law enforcement he posted on YouTube. Federal Rule of Evidence 404(b) generally prohibits admission of character evidence, but it permits the admission of evidence of other acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For evidence to be admissible for one of these purposes, there must be sufficient evidence that the act occurred, the evidence must be "probative of a material

issue other than character," and its probative value must not be substantially outweighed by its "potential prejudicial effect." *United States v. Jackson*, 918 F.3d 467, 483 (6th Cir. 2019) (quoting *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003)). Although we typically review evidentiary issues for abuse of discretion, "there is an 'on-going dispute in this circuit concerning the proper standard of review of Rule 404(b) evidence.'" *United States v. Johnson*, 24 F.4th 590, 605 (6th Cir. 2022) (quoting *United States v. Carter*, 799 F.3d 623, 625 (6th Cir. 2015)). "We have previously reviewed prior bad acts for clear error; permissible purpose *de novo*; and probative value for an abuse of discretion." *Id.*

The video of Johnson's July speech in Louisville showed him acknowledging that police were present on the rooftops of nearby buildings, and in his YouTube videos, he spoke about the need to respond to police violence with violence. Johnson contends that these videos offered little, if any, probative value and severely prejudiced him at trial. The government offered the video of the speech in part to show that Johnson knew that police were on the roofs of downtown civic buildings during his July protest and that they would be there during the September protest. The temporal proximity between the July speech and the September protest increases the probative value of the video, *United States v. Cordero*, 973 F.3d 603, 621 (6th Cir. 2020), and the similar locations of the July and September protests might reasonably lead a jury to conclude that Johnson was aware of the police presence downtown during the September incident. Likewise, the YouTube videos were probative of intent because Johnson posted them just months before the September incident, *see Asher*, 910 F.3d at 860-61, and his comments about forcibly intervening in police conduct spoke to his motive. Any prejudice he suffered as a result did not substantially outweigh the videos' probative value. The district court therefore did not err in admitting the videos.

No. 22-6036
- 8 -

No. 22-6036
- 8 -

For these reasons, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

_Kelly L. Stephens_
Kelly L. Stephens, Clerk