UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOHN F. JOHNSON                                    MOVANT/DEFENDANT

v.                                    CRIMINAL ACTION NO. 3:21-CR-31-BJB
*Filed Electronically*

UNITED STATES OF AMERICA                  RESPONDENT/PLAINTIFF

## **RESPONSE TO MOTION FOR COMPASSIONATE RELEASE**

A jury convicted Defendant John F. Johnson of violating 18 U.S.C. § 111 and § 924(c) on

May 27, 2022 in United States District Court in Louisville, Kentucky after a five day trial.   Citing

Title 18 U.S.C. § 3582(c)(1)(A)(i), Johnson asks the Court to release him from federal prison. [DN.

126, Mot. For Compassionate Release].[1]   The United States objects to the release of Johnson.

Johnson asserts three basic claims:  (1) The defendant is suffering from a serious physical

or medical condition that substantially diminishes the ability of the defendant to provide self-care

within the environment of a correctional facility and from which he or she is not expected to

recover;" (2) The defendant is suffering from a medical conditional that requires long term or

specialized medical care that is not being provided and without which the defendant is at risk of

serious deterioration in health or death; and (3) Combination of his health conditions, included

hypertension and elevated cholesterol place him in the high risk category for COVID-19 or other

infectious diseases.  He also generally argues his rehabilitation in conjunction with other factors is

---

[1] Kentucky's federal court rules state that "motions and responses may not exceed 25 pages without leave of Court."
Joint U.S. Dist. Ct. Rules D. Ky., LR 7.1.   Johnson did not request leave of the Court to exceed the page limitations.
Johnson filed the standard compassionate release motion form and supplemented his motion with 126-1 through
126-12 comprised 95 pages of arguments.   The remaining 399 pages constitute exhibits.  See DN 126-13 to 126-45.
In addition, he filed 50 pages worth of materials separately as sealed documents but did not serve them to the United
States. DN 128.   The Court denied his motion to seal and a copy of the records was provided to the United States.

a basis for compassionate release.   DN 126 at 6.   The United States and Federal Bureau of Prisons (BOP) disagree.

Johnson's claims were reviewed and denied by BOP medical staff and the warden.   This Court should likewise deny his motion.   Johnson fails to put forth sufficient evidence to meet the high standard for release.   While BOP medical records show Johnson has medical conditions, those medical records also show Johnson has been and is being treated for his conditions.   BOP medical personnel have stated in writing that Johnson is not suffering from a medical condition that requires long-term or specialized medical care, he is stable, he is receiving appropriate care from off-site specialists. In fact, according to BOP, Johnson is receiving appropriate care for all his conditions and has not sustained a deterioration in health.   BOP recently reconfirmed that he does not have medical condition for which conventional treatment promises no substantial improvement to his mental or physical condition.

## I.   Summary

In November 2023, Johnson emailed the warden requesting compassionate release.   In November and December 2023, Johnson received two heart related medical procedures including a heart catheterization and a mitral heart valve replacement at a private hospital while in BOP custody.   Medical records provided by BOP show that Johnson's medical treatments and recovery were successful.   In addition, Johnson has high blood pressure (as indicated on his presentence investigative report), high cholesterol and other medical issues that are treated by BOP.   Medical records provided by BOP show he is receiving medication and treatment for his medical conditions.   Johnson also asserted his combination of medical conditions elevated the risk of infectious diseases, such as COVID-19 and staph infections.   Finally, Johnson asserts that his rehabilitative efforts in conjunction with his medical condition, USSG Policy, and 18 U.S.C.

3553(a) factors, are "extraordinary and compelling reasons" for his release.  Not only are his claims not supported by his evidence, but his claims are also refuted by BOP medical records and communications. *See*, *e.g*.,  U.S. Exhibit 5, Email from BOP Moorman September 5, 2024.  Among his unsupported claims, he accuses BOP of falsifying medical records and of untimely medical treatment.   Johnson failed to meet his burden establishing the standards for compassionate release and his motion should be denied.

## II.  Background

On November 18, 2022, Johnson, also known as Grandmaster Jay, was sentenced to a term of imprisonment of 84 months imprisonment and 2 years of supervised release for assaulting a federal officer and brandishing a firearm in connection with a crime of violence in violation of Title 18, United States Code, Sections 111 and 924(c). [DN. 51, Judgment].  Johnson is currently incarcerated at FCI Ashland, Kentucky with a projected release date of July 2, 2028.   On July 31, 2024, Johnson filed a pro se motion seeking compassionate release.  [DN. 126].

## III. Argument

### A.  Compassionate Release Is Not Appropriate for Johnson

Under the three-step inquiry commonly utilized by district courts, Johnson must show and the Court must agree: (1) that "extraordinary and compelling reasons warrant the [sentence] reduction; (2) that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) that release is warranted and appropriate under §3553(a) factors.  *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotations omitted); and *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quotations omitted).  As Johnson, rather than BOP, filed the motion, step two of the inquiry can be omitted.   *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021) (quotations omitted).

B.      Exhaustion of Remedies.

Before a defendant may move for compassionate release in federal court, he must fully exhaust his administrative remedies by making request for compassionate release with the BOP and exhausting all administrative rights to appeal with the prison or wait thirty days after making their request to the prison if the BOP does not respond. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted). A defendant's failure to exhaust their administrative remedies does not deprive a court of subject-matter jurisdiction. *Id.* at 833. Nevertheless, the exhaustion requirement is a mandatory claims-processing rule that courts must enforce if it is invoked by the United States. *Id.* at 833–36.

On November 15, 2023, Johnson requested compassionate release from the BOP warden at his place of incarceration.  In Johnson's email to Warden dated November 15, 2023, he claimed the following:

(1) The defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" and
(2) The defendant is suffering from a medical conditional that requires long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death; and
(3) Combination of his health conditions, included hypertension and elevated cholesterol place him in the high risk category for COVID-19.

Johnson wrote:

> Both of these subsections are applicable to my current situation which was not foreseen when I was sentenced.  In August of 2023 I was informed by the Head of Cardiology at King's Daughters Hospital that without 3 successful heart operations my life expectancy is approximately 24 months.  I am currently recovering form the first of those operations and schedule[d] for the next open heart surgery in the next few weeks.  Additionally, I am also being treated for hypertension and elevated cholesterol.  These medical conditions plus my age (60 years old) place me in a high risk category of life threatening complications if I were to contract Covid 19. My medical and treatment records will confirm all that I have stated here.

4

> The subsequent after care, both short and longer term from these operations to extend my life would be best addressed and supported by my own private healthcare and family.  I request that you support this action per USSG Policy and US Law.

U.S. Exhibit 1, Johnson Email to Warden November 15, 2023.

On January 4, 2023, Advanced Practice Registered Nurse (APRN) Bloom, a medical professional with BOP, wrote a memorandum regarding Johnson's medical condition that was provided to the Health Services Administrator for review of Johnson's compassionate release request.  See Defendant's Exhibit 34, DN 126-34.  APRN Bloom wrote:

> The above referenced inmate has requested consideration for compassionate release/Reduction in sentence.

> Inmate Johnson is a 60-year-old male inmate with the following documented medical conditions: Hyperlipidemia, Essential Hype1tension, hyperlipidemia, Nonrheumatic mitral valve disorder, Gastsro-esophageal reflux disease without esophagitis, Mitral valve replacement, Hypertensive heart disease without heart failure, and heart disease.

> His current medical conditions are managed with several medications. Amlodipine and atorvastatin for hype1tension and hyperlipidemia. Aspirin for heart disease, Docusate are currently being taken for post operative therapy due to constipation from pain medication and prevent unnecessary abdominal strain. He remains stable on his current medications with no significant issues currently. He can ambulate with the use of a rollator walker to the chow hall and he continues to manage to ambulate to medical downstairs as needed without any complications. He will continue to be seen in downstairs medical until he is able to manage stairs.

> He is being monitored routinely with chronic care clinical evaluations and laboratory studies to evaluate his chronic problems. His activities of daily living (ADLs) are unaffected by any medical or mental health conditions. He can independently manage bathing, dressing, eating, and toileting. He stands for counts and moves about the compound independently.

> Based upon the comprehensive medical evaluation of Inmate Johnson, he does not meet the criteria for compassionate release/reduction in sentence/release to home confinement. _He is not suffering from chronic or serious medical conditions related to the aging process. He is not experiencing deteriorating mental or physical health that substantially diminishes his ability to function in a correctional facility. He does not have medical condition for which conventional treatment promises no substantial improvement to his mental or physical condition._

Defendant's Exhibit 34, DN 126-34 at 2 (italics and underline emphasis added).

The warden subsequently denied Johnson's request on January 9, 2024. [*See* U.S. Exhibit 2, Warden Denial Singed January 9, 2024.].  The warden wrote:

> While the Bureau of Prisons does afford the opportunity for inmates to be considered for Compassionate Release/Reduction in Sentence, there are strict guidelines which govern this process.  After a careful review of your request and comprehensive medical evaluation, you do not meet the criteria provided in PS 5050.50 for a Compassionate Release or Reduction in Sentence.  According to medical staff, you are not suffering from a chronic or serious medical conditions related to the aging process.  You are not experiencing deteriorating mental or physical condition for which conventional treatment promises no substantial improvement to you mental or physical condition.  Accordingly, your request for consideration for a Compassionate Release/Reduction in Sentence is denied.  I trust this information has addressed your concerns.

There is no indication that Johnson appealed that ruling.  Based upon the present motion's filing date of November 15, 2023, more than thirty days have passed since Johnson's initial request to BOP and subsequent administrative appeal therefore, pursuant to Title 18 U.S.C. § 3582(c)(1)(A), this Court has jurisdiction to hear this matter. Regardless of whether defendant exhausted his administrative remedies however, his motion should be denied because he has not established an "extraordinary and compelling circumstance" under § 3582.

C. Johnson Fails to Show Extraordinary and Compelling Reasons for Compassionate Release.

A court may only grant compassionate release based on an individual defendant's "extraordinary and compelling reasons," which the defendant has the burden of showing.  [*See United States v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013).  *See also United States v. Elias*, No. 20-3654, 2021 WL 50169, *3 (6th Cir. Jan. 6, 2021) (district court could have denied defendant's motion for failing to provide evidence of claims)].  In addition, a court must consider the factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).

D. Johnson's Current Medical Condition

Johnson is not entitled to release under the new amendments because he is not provided evidence that he is suffering from a medical condition that required long-term or specialized medical care that is not being provided.   BOP provided Johnson's 2023 (attached as U.S. Exhibit 3) and 2024 medical records (attached as U.S. Exhibit 4) totaling 621 pages.   These records prove that Johnson is receiving comprehensive care to manage his conditions at BOP, including specialists and treatments at offsite medical facilities.   The records show that Johnson is treated by cardiologists for his heart related conditions.  He is provided and taking prescribed medications for his medical conditions.

Section 1B1.13(b)(1)(C) (2023) provides that "extraordinary and compelling reasons" exist where:

> The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

Section 1B1.13(b)(1) provides that "extraordinary and compelling reasons" exist where:

Medical Circumstances of the Defendant.—

(A)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)   The defendant is—
  (i)    suffering from a serious physical or medical condition,
  (ii)   suffering from a serious functional or cognitive impairment, or
  (iii)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

On September 5, 2024, at the request of the United States, BOP Health Services Administrator Moorman, who manages and directs health care providers treating Johnson, provided and update on his current medial status.   It was her determination that Johnson did not meet the requirements for medical compassionate release under Sections 1B1.13(b)(1)(B) and (C):

> John Johnson, reg. no. 20257-509, is not suffering from a medical condition that requires long-term or specialized medical care. He is a 60-year-old care 2 stable inmate who is being followed routinely in house and with off-site specialists. He currently has diagnoses of hyperlipidemia, manière's disease, hypertension, gastro-esophageal reflux disease, and a history of mitral valve replacement. He is receiving appropriate care for all of his conditions and has not sustained a deterioration in health. He is not experiencing deteriorating mental or physical health that substantially diminishes his ability to function in a correctional facility at this time. He does not have medical condition for which conventional treatment promises no substantial improvement to his mental or physical condition.
>
> Johnson is not suffering from a terminal illness; therefore he does not have a specific prognosis. Section B i, ii, and iii are all three no. He completes all his activities of daily living without difficulty. He is a Care 1 mental health, and he is not being treated for any mental health issues.
>
> When Johnson arrived at FCI Ashland on December 21, 2022, he reported a history of the Janssen COVID-19 vaccine prior to arrival. Since arriving he has not taken another COVID vaccine, and he has also not been diagnosed with COVID. At any time, an inmate can request a vaccine via electronic copout or stand-up sick call.

U.S. Exhibit 5, Email from BOP Moorman September 5, 2024.

Compassionate release on the basis of medical conditions is limited. *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020) ("a defendant's medical condition must be one of substantial severity and irremediability, and Lisi has not shown that he suffers from such conditions.") *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (must be extraordinary; "Many inmates suffer from pain and mental illness.").

Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12,

2020).  Compassionate release should not be granted based on medical conditions that may be managed in prison; the defendant may pursue administrative remedies to object to inadequate care. *United States v. Miller*, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021) (Breyer, J.) (explaining that the compassionate release guideline "refers to medical conditions that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate. . . . Mr. Miller has alternative avenues to obtain improved medical care. Prisoners routinely bring constitutional claims based on inadequate medical care. . . . Mr. Miller's argument that inadequate medical care makes him eligible for compassionate release under § 3582(c)(1)(A) . . . suggests that Congress intended that statute to serve as an end-run around this established framework. Not so."). *United States v. Grant*, 2022 WL 558347, at *5 (E.D. Pa. Feb. 24, 2022) (Sanchez, C.J.) (complaints by pregnant inmate regarding prison conditions should initially be presented in an administrative forum, and not in a motion for compassionate release). *United States v. Pigford*, 2023 WL 2285825, at *4 (E.D. Pa. Feb. 28, 2 IV.

Johnson was treated for heart related conditions in November and December 2023.  He received a heart catheterization in November 2023. [DN 126-6 at 9]. In December, he received a valve replacement.  [DN 126-6 at 9]. He was returned to FCI Ashland to recover.  He argued in his brief that he was not provided proper or timely health care.  Medical records containing physician's and nurses' notes and the information pertaining to Johnson's cardiology and other medical appointments shows Johnson has received timely and comprehensive medical care.  *See* U.S. Exhibits 3 and 4 (Johnson's Medical Records 2023 and 2024).

Johnson claims he received a life ending trajectory diagnosis in August 2023 as a result of meeting with a cardiologist.  He claims he was told he had a life expectancy of 24 months in front

9

of BOP officers.  [DN 126-6 at 34].  While Johnson does have medial conditions and BOP has taken steps to provide treatment within BOP and at facilities outside BOP, there is no evidence of a "life ending trajectory diagnosis".  The United States has identified no medical records submitted by BOP or Johnson contain that specific finding from a medical professional.

Any claims by Johnson that he has been denied appropriate medical care is also simply not supported by any evidence and is contracted by his comprehensive medical records.  As explained in additional detail below, Johnson's medical records show a history of treatment and responsive medical care provided by BOP and Kings Daughter's Medical Center (KDMC) in Ashland, Kentucky.

Finally, some of Johnson's conditions were known at the time of sentencing and were included in his presentence investigative report:

> He also has a history of hypertension, heart rate fluctuation, tinnitus, vertigo, claustrophobia, and white matter brain disease.  In 2017 or 2018, an airlines flight caused trauma/pressure shock which resulted in blood coming from his ears along with hearing loss.  The defendant indicates American Airlines paid for his medical treatment.  An eventual MRI resulted in the diagnosis of white matter brain disease, consisting of misfiring neurons and increased risk of aneurism or stroke.  He received treatment in Canada which has helped tremendously.  However, several lifestyle adjustments were required to include no alcohol, no smoking, no artificial sweeteners, numerous supplements, and a "clean" diet consisting of fresh fruit, vegetables, and lean proteins.

[DN 104 at 12 Paragraph 66-68].

D.  BOP Medical History for Johnson shows he his being provided medical care.

Despite Johnson's criticisms of BOP medical staff, medical records maintained by BOP for 2023 and 2024 show Johnson's medical needs were addressed.  In August 2023, Johnson was diagnosed with Mitral valve insufficiency by Kings Daughters Medical Center at the Heart and Vascular Center for Non-Invasive Cariology, in Ashland, Kentucky.  Dr. Jennifer Listerman, a

cardiologist at King's Daughters Medical Center (KDMC) in Ashland, was one of his treating physicians.  U.S. Exhibit 3 at 348-350 (2023 BOP Medical Records).

On September 8, 2023, a follow up of medical indicated Johnson had hypertension and a murmur heard on exam.  He has moderate to several mitral regurgitation.  He reported chest pain. *Id.* at 309-16.  On September 26, 2023, Johnson received an assessment plan including a heart catheterization and mitral valve replacement.  *Id.* at 300-6.  The medical order for a left and right heart catheterization was entered by KDMC on September 26, 2023.  *Id.* at 282.

The catheterization procedure was scheduled for November 6, 2023 with follow up appointments on November 14 and November 21.  *Id.* at 275.  The procedure was completed, and Johnson was discharged.  *Id.* at 250-71.  Dr. Bronstein, a cardiologist at KDMC, treated Johnson on November 6, 2023 for his heart catheterization.  *Id.* at 194.  He wrote:

> Left and right heart cath reviewed, will arrange for elective mitral valve surgery. I discussed the benefits, risks, and alternatives of mitral valve repair, possible mitral valve replacement with mechanical valve with the patient which include, but are not limited to death, MI, Stroke, AIDS, Hepatitis, renal failure, wound infection, limb loss, and phrenic nerve damage. He understands and wishes to proceed.

*Id.* at 192.

A little over one month later, Johnson was scheduled for the mitral valve replacement on December 18, 2023.  *Id.* at 184.  He remained at the hospital on December 19, 2023.  *Id.* at 173-78. The note indicated the following:

> Inmate remains in cardiac ICU 7 at Kings Daughters Medical Center after having a valve replacement.  Spoke with Jamie RN, states inmate is progressing well. States he will be transferred to a regular floor later today if everything goes as well as it has. States discharge planning will be after he is on regular floor. Vital signs are stable, labs good. Inmate is ambulating.

*Id.* at 41.

BOP Heath noted the following for December 20, 2023:

Called KDMC 4K431 and spoke with April. I/m s/p valve replacement. I/m will have echo done today. Wound to chest is open to air. Discharge is scheduled for tomorrow. Vitals 145/84 p92 r 20 sat 98% on room air.

*Id.* at 40.

On December 21, 2023, BOP noted:

60 yo male inmate returned from KDMC post MVR replacement. CAOx3, P/W/D, resp e/u. Inmate denies increased pain. He is able to ambulate with walker. Incision site is without redness or edema, well approximated no drainage. Chest tube sites are well approximated, no signs of infection, no drainage. R neck central line dressing to be removed tomorrow. No edema noted to bilateral lower extremities. Abdomen is soft nontender. Post op instructions given for incentive spirometer, ambulation and post op complications to watch for. Will schedule for wound care follow up. Waiting for full hospital and surgical. He is placed on bottom bunk in C unit, shower chair and instructions given. Observed inmate ambulating to unit without difficulty.

*Id.* at 15-20.

On December 22, 2023, BOP noted the following:

discharge. CAOx3, reports sternal pain from op site, denies cardiac pain. Inmate able to ambulate from cell to medical and back again with walker. Gait is steady with the assistance of walker. Resp even nonlabored, after ambulating from c unit to medical vital signs within normal limits O2 sat 97% on room air, resp 16 nonlabored. HR 91 regular rhythm. Chest wound is without drainage, redness or warmth. Op Sites painted with betadine. No edema noted to extremities. Strongly encouraged inmate to walk and use his arms with the exception of lifting anything stronger than 10 pounds. Brought inmate his new medication prescribed by Dr. Listerman. Inmate walked to pill line took pain medication and then ambulated back to c unit with use of walker.

*Id.* at 10-14.

On December 25, 2023, Johnson was taken back to hospital for postop pain.  BOP noted:

He was sent out after hours last night for c/c of chest pains. Evaluated for "postop pain" per discharge packet. RX upon return. He denies complaints with escorting staff while outside of our facility. Denies current medical complaints.

*Id.* at 6.

On December 27, 2023, Johnson had a follow up visit with BOP health services:

12

> 60 yo male inmate seen in downstairs medical for follow up evaluation. CAOx3, denies chest pain, palpitations, shortness of breath. Inmate reports he feels stronger today. Is able to ambulate 200 feet without having to stop or become short of breath. Inmate reports he is eating better and bowels are moving. Incision site is without redness, edema, or drainage.

*Id.* at 1-5.

On January 3, 2024, APRN Bloom wrote a note documenting Johnson's health services

clinical encounter at FCI Ashland:

> Inmate seen in downstairs medical for follow up.  Inmate repots he feels stronger.  CAOx3, resp e/u, denies heart pain or shortness of breath, however, reports his chest hurts from the sternum when he coughs or sneezes.  Inmate ambulate with rollator walker.  He reports it is a big production to go to chow hall and he would like to have his meals delivered until he can do things on his own.  Inmate is able to walk back to cell form down stairs medical unit without shortness of breath, chest pain, or difficulty with ambulation.

U.S. Exhibit 4 at 122 (BOP 2024 Medical Records).

On January 4, 2024, APRN Bloom noted:

> 60 yo mail inmate seen in medical clinic downstairs for cardiac PT.  Inmate denies heart pain or worsening shortness of breath.  CAOx3, resp e/u, P/W/D, ambulates with rollator without difficulty.  Today inmate was ablet o take one step up and step down with minimal assistance.  Surgical incision is without redness or drainage.  Inmate able to carry conversation without difficulty.

*Id.* at 117-21.

On January 5, 2024, APRN Bloom wrote a note:

> 60 yo male inmate seen in downstairs medical for PT. CAOx3, resp e/u, reports there was an incident in the early morning that woke him up coughing and caused his sternum to hurt. Reports his chest is sore from the coughing. Heart rate and rhythm are a regular rate and rhythm. Lung fields clear. Inmate observed ambulating with rollator and without difficulty. Observed ambulating from downstairs medical to C unit without shortness of breath. No facial grimacing or guarding noted. Due to coughing episode during the night will restart attempting steps on 1/8/24. Inmate agreeable.

*Id.* at 111-16

On January 8, 2024, APRN Bloom wrote:

60 yo male inmate seen in downstairs medical for evaluation. CAOx3, resp e/u, denies chest pain, dizziness, headaches, or shortness of breath. Inmate reports he had a good weekend and feels he is getting stronger. Reports he is urinating more at night but otherwise is doing well. Today he rates his sternal pain at 4/10 and 10/10 when he coughs or sneezes. Inmate able to go up two steps and back down unassisted without difficulty. Inmate then able to walk back to C-Unit without periods of rest. No grimacing, guarding, or increased respiratory difficulties witnessed. Incision to chest is healing with a fine scar noted, 1cm scab noted to distal scar. No drainage, redness, or temp change noted.

*Id.* at 106-10.

On January 10, 2024, APRN Bloom wrote:

61 yo male inmate seen in downstairs medical for follow-up. CAOx3, resp even non labored, denies chest pain, palpitations, dizziness, headaches, or shortness of breath. Inmate ambulates with rollator. Reports it continues to hurt in his sternum when he coughs or sneezes but otherwise is doing well. Inmate is up to 4 steps and back down without assistance.

*Id.* at 100-104.

January 12, 2024, APRN Bloom wrote:

61 yo male inmate seen in downstairs medical for rehab. Well appearing Inmate CAOx3 resp e/u, denies chest pain or worsening shortness of breath. Well appearing, ambulates with rollator walker. Inmate reports approximately between 2100 and 2130 at count felt a pain that started at the middle of the back of his head radiated down his left side and arm. Reports it was a nerve type pain and he felt fatigued. Inmate reports he was fully cognitive of something going on but was not sure what it was. Inmate report this happened soon after his surgery and lasted a short period of time. Inmate denies any symptoms today. Inmate able to climb 5 steps and back down without assistance. Rest period of 2 minutes and then ambulated back to C unit without difficulty.  Assessment: no neuro deficits noted, equal grips, no facial droop or unilateral weakness noted.

*Id.* at 98

On January 17, 2024, APRN Bloom wrote:

61 yo male inmate seen in downstairs medical for physical therapy. CAOx3, resp e/u, reports continues sternal pain, denies headaches. Inmate ambulates without difficulty able to hold conversation while ambulating. Inmate was able to walk up 5 steps and back down, then walked back to C-Unit without a period of rest today without shortness of breath.

*Id.* at 93-97.

On January 18, 2024, APRN Bloom wrote:

61 yo male inmate seen in downstairs medical for follow-up. Inmate denies chest pain, headaches, dizziness, or shortness of breath. Inmate ambulated to downstairs medical from c-unit without difficulty. After assessment completed inmate ambulated to steps walked up six steps, then walked down steps without assistance. Inmate then rested 5 minutes and ambulated back to C-unit.

*Id.* at 91-92.

On January 24, 2024, APRN Bloom wrote:

61 yo male inmate seen in downstairs medical for PT. Inmate reports he has dizziness when he stands up. Denies chest pain or shortness of breath. Witnessed inmate able to sit, stand, and ambulate with steady gait. No nystagmus noted. Inmate is steady upon standing and ambulating. Inmate reports he is trying to walk some without the walker. EKG denotes NSR no elevation or depression noted. Heart rate 78, PR 110/152 ms, QRS: 98ms, QT/QTc: 356/405 ms, P/QRS/T axis: 74/27/-86 deg. No PT completed this am. Inmate denies increased anxiety or depression. No edema appreciated.

*Id.* at 87-91.

On January 29, 2024, APRN Bloom wrote:

61 yo male inmate seen in downstairs medical for evaluation. CAOx3, resp e/u, denies chest pain, headaches, palpitations, or shortness of breath. Inmate reports he is eating and drinking.  Reports the incision to his chest is itching but denies increased pain. Today inmate able to walk up one flight of steps to medical without a pause, denied chest pain, shortness of breath and was able to carry a conversation. Inmate with equal grips and no neuro deficits appreciated.

*Id.* at 83-86.

On January 31, 2024, APRN Bloom wrote:

CAOx3, resp even non labored. Inmate seen in downstairs medical for evaluation. Inmate denies SI or HI. He ambulated to stairwell without difficulty. Once in stairwell. Inmate went up one flight of steps with fluid steps to top of landing without holding onto rail and back down steps without holding onto railing in a two-minute time frame. Inmate did not hold chest, no facial grimace, no shortness of breath noted. Inmate then was able to walk back to C unit without taking a rest brake and able to hold conversation.

*Id.* at 82-86.

On February 1, 2024, APRN Bloom wrote the following about a clinical encounter with

Johnson:

> 61 yo male inmate seen in downstairs medical. CAOx3, denies chest pain, shortness
> of breath, headaches. Inmate reports dizziness. Orthostatic completed and
> asymptomatic. Inmate advised to drink plenty of fluids and come to sick call if he
> has continued concerns. Inmate was observed walking to chow without difficulty.

*Id.* at 68-70.

On February 20, 2024, Johnson was examined by Dr. Bronstein (KDMC Cardiologist) for

a post operation follow up.  *Id.* at 185-190.  A return appointment was not needed.  The physician's

note indicated that "he needs [follow up] with cariology – Dr. Listerman, yearly.  If vertigo not

improved with antivert, recommend ENT [Ear Nose and Throat]."  The treatment recommendation

was no lifting more than 15 lbs. for one more month, then no restrictions.  *Id.* at 194.

On February 20, 2024, RN Malone wrote a note detailing Johnson's health Services clinical

encounter:  "I/M returning from KDMC Cardiology. Paperwork placed in the bin to be scanned.

Denies Medical complaints or complaints with escort staff."  *Id.* at 61.

On February 29, 2024, Health Services Administrative note from APRN Bloom indicated

that:

> Cardiology chart review completed. Recommendations Return to normal activity
> Follow up with cardiology in one year- Dr. Listerman If continues to have vertigo
> follow up with ENT.

*Id.* at 59.

> On February 21, 2024, APRN Bloom wrote:

> Chart Review encounter performed at Health Services.  Inmate returned from
> cardiology apt for MVR surgical follow-up.  Will schedule follow-up apt.  Seen by
> Dr. Rios on return trip.  No pain indicated.

*Id.* at 60.

16

On March 28, 2024, APRN Bloom wrote:

60 yo male inmate seen in medical for continued dizziness. CAOx3, resp even non labored, denies headaches, or shortness of breath. Inmate, report he continues to have chest pain from his sternal incision and the clips. He reports he still gets dizzy, and the medicine is not helping. Inmate reports the literature says he needs to be on warfarin. Advised inmate he would have to be at a medical center to receive warfarin as it is a drug that requires weekly monitoring and his cardiologist's recommendation is a daily aspirin. Inmate is developing a keloid scar from his thoracic surgery. Inmate reports he feels he is having pain from the clips placed in his chest to keep his chest together. CXR and EKG obtained. No changes noted.

*Id.* at 40-44.

On May 1, 2024, Health Services Clinical Encounter Dr. Francisco Rios wrote:

States he has been having chest pain and shortness of breath. States on and off swelling of the legs. States dizziness and ringing of the ears. States the Meclizine helps with the motion sickness but not with the actual dizziness. States he is still having issues with the endurance, but he knows it will get better over time. Denies fever or chills. Patient allergies reviewed and updates applied during this visit if indicated. See Chart: Allergies for most recent patient allergy list.

*Id.* at 33-37.

On May 21, 2014, Johnson was examined by Dr. Listerman. He was scheduled for a follow up on August 21, 2024. His assessment/plan presented the following findings:

Atypical chest pain, Essential hypertension, S/P mitral valve repair with P2 resection, 28 mm Physio II annuloplasty ring, and ligation left atrial appendage, EF 60% (12/18/2024), colon cancer screening declined, mixed hyperlipidemia, and vertigo. Blood pressure near goal, on statin, had a reassuring cath < 1 year ago, suspect MSK etiology for atypical chest pain. Discussed. Given fatigue and dyspnea with recent operation will order limited echocardiogram to evaluate valve. Suspect has component of decondition. Follow up with PCR regarding vertigo and urinary complaints, he reports he has had recent colon cancer screening, he reports he has follow up with ENT for vertigo, counseled fall precautions.

*Id.* at 27-32.

On May 21, 2024, APRN Bloom wrote:

60 yo male inmate seen for cardiology return visit. Inmate evaluated by Dr. Listerman for elevated blood pressure, S/P mitral valve repair with P2 resection, 28

mm Physio II annuloplasty ring, and ligation left atrial appendage. EF 60%, atypical chest pain, spinning sensation and mixed hyperlipidemia. Recommendation to follow up with ENT for spinning sensation and Echo in 3 months. Inmate hypertensive on arrival, KDMC called regarding hypertension and recommendation to discontinues HCTZ. Recommendation is to take b/p readings daily and call back on Monday 5/27/24.

Inmate evaluated upon return. CAOx3, resp e/u, P/W/D. Inmate reports he is urinating every 40 min at night, labs are pending. Denies urgency, dysuria, or hesitancy. Inmate reports mother passed away on 4/8/24. Inmate reports he is doing ok. Denies increased anxiety or depression, denies SI or HI.

*Id.* at 27-32.

August 7, 2024, On May 21, 2024, APRN Bloom wrote:

59 yo male inmate seen in clinic for follow up lab review, chest pain, and discuss dizziness. CAOx3, resp e/u, P/W/D, ambulates with steady gait. Denies shortness of breath, headaches, or increased fatigue. Reports he continues to have pain to the center of his chest that has never subsided since having surgery, reports it is some better but continues to cause him  pain. He reports the pain sometimes goes into his back, goes up both shoulders and into his neck. Furthermore, he reports pain sometimes goes down into his thighs. Denies increased shortness of breath. Reports continued dizziness. Advised inmate ENT apt was cancelled as they recommend neurology consult and awaiting a scheduling date. Inmate reports sometimes it feels like his heart is racing like it is trying to catch up. Inmate denies increased anxiety or depression. Inmate reports he is eating and sleeping without difficulty. Denies SI or HI. Denies bowel or bladder concerns. Reviewed labs with inmate. Inmate encouraged to come to sick  call as needed Plan 2D echo as recommended per cardiology blood pressure monitoring will restart HCTZ 12.5 mg consult placed for holter monitor due to palpitations C-spine cxr Follow up with cardiology per recommendation EKG

*Id.*  at 5-8.

August 7, 2024, On May 21, 2024, Health Services Clinical Encounter APRN Bloom wrote:

Chart review for xrays
CXR
Impression
No acute cardiopulmonary disease. Stable chest compared to prior exam.
Lungs are clear
Heart size is normal. Redemonstration of sternotomy and prosthetic cardiac valve

*Id.*  at 4-5.

BOP medical records for 2023 and 2024 show that Johnson is receiving medical treatment and has recovered from his heart related procedures.  The records and statements provided by BOP show that Johnson does not meet the standard for early release.

### E.   Prison Conditions During the Pandemic Are Not a Basis for Relief.

On May 11, 2023, marked the end of the federal COVID-19 public health emergency declaration.  Johnson asserts that his sentence should be reduced to time served because his incarceration during the Covid-19 in combination with his heart surgery, high blood pressure and high cholesterol places makes him highly vulnerable to infectious diseases.  He argues that a variety of infectious disease from staph infections, conjunctivitis, and COVID-19 place him at an elevated risk.

Johnson's claim, similar to other inmates claims, has been denied.  Johnson's claim fails because it is not an extraordinary and compelling reason, as it is applicable to every single inmate incarcerated during the pandemic.  [*See United States v. Hernandez*, 2024 WL 52287, at *3 (D. Kan. Jan. 4, 2024) (Melgren, C.J.) ("Operational difficulties at prisons during the COVID-19 pandemic is not similar in gravity to the extraordinary and compelling reasons set forth in those paragraphs.); *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020) ("the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); *United States v. Crumble*, 2021 WL 236003, at *4 (E.D.N.Y. Jan. 25, 2021) (the inmate's time in BOP custody has been particularly difficult, given the power outage at one facility and the COVID-19 pandemic at another, but this does not provide a basis for relief because, "everyone incarcerated at these facilities experienced those same conditions"); *United States v. Marmolejos*, 2021 WL 807128, at

*4 (S.D.N.Y. Mar. 3, 2021) (arduous prison conditions during the pandemic are not an extraordinary circumstance, as the court took that into account when imposing sentence after the pandemic began); *United States v. Johnson*, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021) ("although the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling."); *United States v. Hernandez*, 2022 WL 910091, *5-6 (E.D. Pa. Mar. 28, 2022) (Leeson, J.) (prison conditions during the pandemic do not present grounds for compassionate release absent a showing of unique harm to the petitioner).]

As noted earlier, when Johnson arrived at FCI Ashland on December 21, 2022, he reported a history of the Janssen COVID-19 vaccine prior to arrival. Since arriving he has not taken another COVID vaccine, and he has also not been diagnosed with COVID. At any time, an inmate can request a vaccine via electronic copout or stand-up sick call. *See* U.S. Exhibit 5, Email from BOP Moorman September 5, 2024.

Johnson's claim is similar to many inmates and has been denied in United States v. Inman, 583 F. Supp. 3d 1117, 1122–24 (M.D. Tenn. 2022). In, Inman, the defendant based his request for compassionate release on: (1) "his current health conditions and the rapid spread of COVID-19"; (2) he went through heart valve replacement and defibrillator implant in 2020, making him "more likely to succumb" to COVID-19; (3) he has not received any incident reports during his incarceration and he is enrolled in the Challenge Program. The United States argued the reasons were not not "extraordinary" nor "compelling" because Defendant does not submit any proof of these reasons. But even if he had, the Government contends, those reasons are still not "extraordinary" and "compelling," because Defendant has been vaccinated and because

rehabilitation (although commendable), is something the Court should expect of every incarcerated defendant and Congress has made clear that rehabilitation alone does not amount to an extraordinary and compelling reason. (Doc. No. 55 at 4-7)."

The Sixth Circuit recently held that a defendant's mere access to the COVID-19 vaccine while incarcerated forecloses a finding of extraordinary and compelling reasons based on a defendant's underlying health conditions, unless the defendant can advance a "compelling reason" justifying the defendant's failure to be vaccinated. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). In this case, Johnson is afforded access to the COVID vaccine and ample medical treatment, therefore, his claims should be denied.

F. <u>Rehabilitation Is Not Sufficient</u>.

A defendant's rehabilitation does not qualify as an extraordinary and compelling reason to warrant a sentence reduction. According to § 1B1.13(d) and pursuant to 28 U.S.C. § 994(t), "rehabilitation of the defendant, by itself, is not an extraordinary or compelling reason for purposes of" sentence reduction or release. However, "rehabilitation of the defendant while serving the sentence may be considered in combination" with other individualized circumstances, if present, to determine if a reduction is warranted. U.S.S.G. § 1B1.13(d).

Johnson's final claim, regarding his rehabilitation, is insufficient as a basis alone or in conjunction with his above addressed claims to provide an extraordinary and compelling reason. Section 1B1.13(d) (2023) provides:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

Here, Johnson's work to rehabilitate, while commendable, does not rise to the level of extraordinary and compelling, as it the baseline of what is expected from every inmate.  [*See United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary."); *United States v. Logan*, 2021 WL 1221481, at *8 (D. Minn. Apr. 1, 2021) (Schlitz, J.) (rehabilitation, even in combination with other considerations, is usually not compelling: "Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary. . . . The Court recognizes that there could be truly extraordinary instances of rehabilitation, such as a defendant who risks his life to help his fellow inmates in a pandemic or to rescue a corrections officer who has come under attack. But there is nothing 'extraordinary and compelling' about a prisoner who simply does the things that prisoners are supposed to do.")].  Johnson's circumstances of rehabilitation are like every other inmate and not extraordinary or compelling to warrant sentence reduction.

Johnson cites a variety of letters of supporters like the support letters he submitted at sentencing.  The community support of a defendant is not listed as an extraordinary and compelling justification warranting a sentence reduction. U.S.S.G. § 1B1.13.

G.   The § 3553(a) Factors Do Not Support Release.

Even when a defendant is statutorily eligible for a sentence reduction based on an "extraordinary and compelling reason," compassionate release is not necessarily appropriate. Before ordering relief, courts must consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. 3582(c)(1)(A).  Factors such as nature and circumstances of the offense, the seriousness of the offense, the need for punishment for Johnson's crime, deterrence for Johnson and others, and the danger he presents to the community weigh strongly against release.  Johnson's serious criminal

conduct was violent, involved several law enforcement officers, and involved a high-powered AR-15 assault rifle. In addition, Johnson's violent rhetoric towards law enforcement demonstrated advocacy of violence. Johnson also had a history of violence with firearms as indicated in the PSR. Johnson was also convicted of an offense with a mandatory minimum sentence by a jury. At the time of his sentencing for the instant offenses, Johnson stood as a convicted of a violent felony offense with a firearm. Therefore, the factors in 18 U.S.C. § 3553(a), do not mitigate Johnson's arguments for release.

Granting compassionate release in this case would undermine the goals that sentences "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). As such, release is not warranted. [*See United States v. Pinson*, 835 F. App'x 390, 395 (10th Cir. 2020) (not precedential) (the district court did not abuse its discretion in denying relief, regardless of the inmate's family circumstances and other asserted factors, based on her history of violence and threats); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020) (defendant has served 10 years of 25-year term for drug and witness tampering offenses; suffers from a blood disorder that caused strokes and partial paralysis, as well as "heart problems, high blood pressure, high cholesterol, and blood clots"; the district court did not abuse its discretion in denying relief, based on the fact that the defendant had not served half his sentence, the original sentence included a 5-year downward variance, he committed serious offenses while suffering from the same conditions, and he had a record of drug and weapons offenses); *United States v. Texeira-Nieves*, 23 F.4th 48, 56-57 (1st Cir. 2022) (the district court did not abuse its considerable discretion in denying relief based on the seriousness of the drug trafficking offense); *United States v. Ikehara*, 2020 WL 3065104 (D. Haw. June 9, 2020) (defendant has 39 months remaining on

100-month drug sentence, and has lengthy criminal record for myriad offenses; relief is therefore denied notwithstanding coronary artery disease, heart disease, hypertension, hyperlipidemia, and Type II diabetes); and *United States v. Walker*, 2020 WL 2520242, at *3 (W.D. Va. May 18, 2020) ("Walker has spent most of his adult life as a drug user and dealer who possesses firearms, resulting in five separate federal prison sentences by the age of 39. He has longstanding psychological issues that may increase his danger to society. He has shown before that he will not obey conditions of release. I do not believe that his release at this time will have a different result.")].

In view of the sentencing factors, compassionate release of Johnson would be improper here.

**CONCLUSION**

Mr. Johnson has not shown extraordinary and compelling reasons to warrant a sentence reduction or modification.  The United States respectfully requests that the Court deny the motion for compassionate release.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

*\SJoshua Judd*_____
Joshua Judd
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
PH: (502) 582-5911
FAX: (502) 582-5067

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

I further certify that I mailed the foregoing document, along with the notice of electronic filing, by first class mail to the following non-CM/ECF participant:

John F. Johnson, 20257-509
FCI Ashland
State Route 716
Ashland, KY 41105

<u>*S/Joshua Judd*</u>
Joshua Judd
Assistant United States Attorney
