UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FILED
JAMES J. VILT, JR. - CLERK

OCT 21 2024

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff ) | Case No. 3:21-CR-31-BJB |
| ) | |
| v. ) | REPLY TO RESPONSE |
| ) | OPPOSING MOTION |
| ) | For Compassionate Release |
| JOHN FITZGERALD JOHNSON ) | Title 18 U.S.C. § 3582(c)(1)(A) |
| ) | |
| Defendant ) | |

Under Title 18 U.S.C. § 3582(c)(1)(A) and in accordance with USSG § 1B1.13, the Defendant (herein referred to as Dr. Johnson) filed a Motion For Compassionate Release with the court. On behalf of the United States, the United States Attorney for the Western District of Kentucky has objected to this motion and its Response is on the record. The Government submitted a letter in opposition on September 13, 2024 (DN 135)(Gov't Opp. Letter). The Government opposed Dr. Johnson's Motion on the basis that his medical conditions, the conditions of his incarceration during the pandemic, and his conduct as a prisoner do not constitute extraordinary and compelling circumstances warranting a sentence reduction. Id. at p.24. While the Government "acknowledged Dr. Johnson's exemplary record and commended him for his efforts at rehabilitation, it contended that his rehabilitation "does not rise to the level of extraordinary and compelling, as it is the baseline of what is expected from every inmate." Id. p.22. Moreover, the Government argued, even if Dr. Johnson's circumstances were extraordinary and compelling,"the seriousness of the offense, the need for punishment for Johnson's crime, deterrence for Johnson and others, and the danger he presents to the community weigh against release." Id. p.22.

Under Federal Rule 7.1(c), Dr. Johnson submits this Reply to the Court. Dr. Johnson submits the following facts and rebuttal arguments that proves that the Motion not only satisfies the required elements justifying a

1

compassionate release, but also that the Goverment's Response is not in harmony with the record, current policies of the United States Sentencing Commission, Congressional intent under the First Step Act of 2018, holdings of this Circuit, program and policy statements published by the Federal Bureau of Prisons and the Department of Justice.

## Summary

While serving an 86 month sentence for violating 18 U.S.C. 111(b) and 18 U.S.C 924(c), Dr. Johnson experienced a rapid deterioration of health over a nine month period. Through a series of tests and procedures conducted outside of the BOP, it was determined that Dr. Johnson was suffering from a failing heart condition that, if untreated, would result in his death. While proceeding with a series of cardiological surgeries, the BOP failed to provide adequate healthcare and failed to provide the life long specialized healthcare required after the completion of Dr. Johnson's open heart surgery. As the recipient of a prosthetic heart valve device, matters were further compounded by the risk of death from exposure to common contagious bacteria that fataly afflict those with these implants. In the face of ongoing outbreaks of these contagious diseases and the already apparent lack of adequate healthcare, Dr. Johnson pro-actively submitted a request to the Warden of his facility to have the BOP initiate a request for compassionate release after it failed to transfer him to a Federal Medical Center(FMC) in accordance with published BOP/DOJ policies. When the BOP did not respond and further conditions developed, placing Dr. Johnson at risk of death, the Motion before the Court was presented.

Reply Arguments

A. Government Misapprehends Basis of Dr. Johnson's Motion

The Government has misapprehended the basic claims of Dr. Johnson's motion. Though they are clearly stated in the "Summary of Request For Relief Under 18 U.S.C. § 3582(a)", section 9 of the motion, p. 58-60, they are reiterated here to refute the misapprehension.

(1.) Dr. Johnson suffers from a serious medical condition that places him at an elevated risk of complications with a 100% fatality. The risk of Endocarditis, that afflicts individuals in receipt of prosthetic valve implants is increased exponentially within the close quarters of an incarcerated environment, where two of the most contagious infectious agents are common. Neither of these infectious agents are COVID-19. Streptococci (Strept Throat), Conjunctivitis (Pink Eye), and Staphylococcus (Staph Infection) are the agents that Dr. Johnson provided information from medical experts, validating the fatality of exposure. Dr. Johnson also provided evidence of two recent outbreaks of strept and pink eye at the FCI Ashland facility. Thus as stated in the motion, Dr. Johnson reiterates the Court can find extraordinary and compelling conditions exist under USSG § 1B1.13(1)(D)(ii). This provision states that an extraordinary and compelling condition exists when "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i)." Dr. Johnson's incarceration places him in an environment that increases the threat posed by infectious agents that will result in Endocarditis, which is fatal to those with prosthetic valve implants, such as Dr. Johnson. A significant amount of supporting information and evidence was provided in the motion in section 4, "Facts Establishing Extraordinary And Compelling Reasons Per USSG 1B1.13", part N, "Elevated Risk of Infectious Agents With Fatal Consequences", p.22-24;

3

part S,"Inmate Housed In High Risk Environment With Ongoing Infectious Disease Outbreaks", p.28  Dr. Johnson subjects this situation to the Somerville Framework Test derived from United States v. Somerville, 463 F. Supp. 3d 585; 2020 U.S. Dist. LEXIS 93935(W.D. Penn) and details the results in the motion. This is the first basis of Dr. Johnson's claims.

(2) As a result of the cardiological operations performed on Dr. Johnson and the resulting implantation of a prosthetic valve device, Dr. Johnson requires specialized medication (Warfarin) and weekly blood monitoring for the rest of his life. This specialized regimen prevents the development of blood clots within the prosthetic implant that can result in a fatal thromboembolism. The BOP has failed to provide this treatment. Extensive information explaining and emphasizing the need for this specialized treatment was submitted in the motion section 4 "Statement of Facts Establishing Extraordinary And Compelling Reasons Per USSG 1B1.13", part E. "Medical Response Plan To Avert Death", p.15-16. The medical records indicate on at least two occasions  Dr Johnson raised this issue with the medical staff at FCI Ashland and was told that type of care is not available at that location and to receive it he would have to be transferred to a Federal Medical Center. (Exhibit 49) The basis of this claim aligns with USSG § 1B1.13(b)(1)(C) which provides that "The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." This information was provided in the motion along with medical records, guidance from medical experts, expert medical publications, and the BOP's own Care Level Classification For Medical And Mental Health Conditions Or Disabilities Guidance (2019). The inability of the BOP to provide the prescribed specialized medical care to prevent Dr. Johnson from having a thromboembolism is the second basis of his claims.

4

The Government's position that Dr. Johnson has not put forth sufficient evidence to meet the standards is not in harmony with the record or the application of the definitions of what constitutes "extraordinary and compelling " reasons published in USSG 1B1.13. The Government's parroting of the BOP's statement of Dr. Johnson not suffering from a serious medical condition that requires longterm or specialized medical care is contradicted by a reading of the medical records. This statement is the opinion of an administrator who is not a specialist in the field of cardiology. The medical records indicate that Dr. Johnson has been scheduled for multiple appointments to see offsite specialists in the fields of cardiology, nurology, ear nose and throat, and the fitting of a heart monitoring device. None of these have actually happened as of this writing.

(3) Dr. Johnson's basis for his final claim is also misapprehended by the Government regarding the inclusion of his record of rehabilitation. In authorizing the work of the U.S. Sentencing Commission, Congress directed that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction. 28 U.S.C. § 994(t). Rehabilitation can, however, "interact" with other factors to constitute extraordinary and compelling reasons to reduce a sentence. United States v. Brooker, 976 F .3d 238 (2d Cir. 2020). Congress's "use of the modifier 'alone' evidences that it believed that rehabilitation is relevant to the question of whether a sentence should be reduced and that rehabilitation, when considered together with other equitable factors, could constitute 'extraordinary and compelling reasons' for a sentence reduction." United States v. Millan, No. 91-CR-685 (LAP), 2020 U.S. Dist. LEXIS 59955, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020). There is nothing in the compassionate release law requiring that a determination of extraordinary and compelling factors warranting compassionate release must be based on a single circumstance. Rather, as the law permits and common sense dictates,

... the finding of extraordinary and compelling circumstances warranting release can be based on a combination of circumstances taken together." United States v. Rengifo, 569 F. Supp. 3d 180, 192-93 (S.D.N.Y. 2021). Dr. Johnson's rehabilitation record is exceptional for a number of facts that are presented in the motion section 5, "Medical Circumstances And Exemplary Combination", p. 41-43. Dr. Johnson cites USSG § 1B1.13(D) which states "rehabilitation of the inmate is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Dr. Johnson's rehabilitation is submitted for consideration in conjunction with the other three extraordinary and compelling reasons proffered. This is the final basis of the claims at the core of the motion.

B. Government Misapplies USSG 1B1.13 Application

Following the passage of the First Step Act of 2018, the Sixth Circuit held that a court must consider when deciding a compassionate release motion brought directly by an inmate. United States v. Elias, 984 F .3d 516, 519 (6th Cir. 2020). "Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an "extraordinary and compelling" reason justifies compassionate release when the imprisoned person files a § 3582(c)(1)(A) motion.

On November 1, 2023, the Sentencing Commission updated the policy statement in USSG § 1B1.13 to address changes that had been made to 18 U.S.C. § 3582 (c)(1)(A) through the First Step Act. The amendment expanded the policy statement and clarified that it should be applied both to motions filed by the BOP and to motions filed directly by defendants. "Among other things, the amendment extends the applicability of the policy statement to defendant-filed

6

motion; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act." See, USSG Supplement to App. C at 205 (Nov. 1, 2023). In order to grant the relief under 18 U.S.C. § 3582(c)(1)(A whther addressing a request by the BOP or made directly by an inmate, the Court must now find that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission," in addition to finding that there are extraordinary and compelling reasons warranting relief and considering the § 3553(a) factors.

   Dr. Johnson's motion is built and has been submitted on the premise of the Court's application of 18 U.S.C. § 3582(c)(1)(A) and USSG § 1B1.13's most current iteration. The Government's position that "As Johnson, rather than BOP filed the motion, step two of the inquiry can be omitted" is blatantly contradictory and misleading to the Court which has demonstrated its knowledge of these changes and is aware of the change to the "three step inquiry" as it has demonstrated in United States v. Trevor Putty, No. 5:19-cr-2-BJB, 2024 U.S. Dist. LEXIS 108951 (W.D. Kentucky June 20, 2024). "Until recently, the second step played no role in the anlysis. Congress instructed the Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction." 28 U.S.C. § 994(t). But the Sentencing Commission didn't promulgate a policy statement addressing motions filed by defendants until 2023." The same consideration should be given to Dr. Johnson's motion. It is clear that the Government's approach and response is based on an outdated apprehension of compassionate release statutes and policy.

C. <u>BOP Never Responded To Claims In Motion But Denied Pro Active Request</u>

It is the Government's position that "Johnson's claims were reviewed and denied by BOP medical staff and the warden." Govt. Response, p.2. This statement would seem self evident on its prima facie view but fails the reality test as Dr. Johnson communicated in great detail in his motion. The original request for the BOP to initiate a Compassionate Release was submitted November 15, 2023 after the first surgical procedure but before the second more major open heart surgery and implantation of the prosthetic valve device on December 18, 2023. The request was made in light of the failures of the BOP to provide adequate aftercare for the first surgery and the need for the life long specialized healthcare and immediate aftercare that would result from the second impending surgery. Initially there was no response from the BOP. As the motion states and evidence provide proves, it was not until Dr. Johnson filed a written complaint regarding the poor to non-existent healthcare he was subjected to after the open heart surgery that the BOP responded 59 days later. The Government points to the Denial as proof that Dr. Johnson's claims were reviewed yet it bears repeating what was already shared with the Court in the motion on page 29:
"The Warden's summary denial of Dr. Johnson's request for release reflects the very same deficiencies identified by the court in <u>Martinez-Brooks v. East & Carvajal</u>, 459 F. Supp. 3d 411, 2020 U.S. Dist. LEXIS 83300 (May 12, 2020) WL 2405350, at *26 ("All of these circumstances support the order I issue today which requires the Warden...to explain why, apparently, no consideration is being given in this process to the serious risk of illness or death posed to the medically vunerable subclass.") The denial letter sent to Dr. Johnson appears to apply the outdated and restrictive standard that Congress sought to change with the First Step Act. In a post First Step Act and post-pandemic world, this rote denial doesn't inspire confidence that Dr. Johnson's circumstances will be addressed." His proactive request was denied and his circumstances were not addressed hence the detailed motion after the fact. The complaint that prompted the BOP response was submitted as (EXHIBIT 31).

D. <u>Rebuttal of Government's Argument That Dr. Johnson's Rehabilitation Is Not Extraordinary Or Compelling</u>

The Government's position is that Dr. Johnson's rehabilitation "does not qualify as an extraordinary and compelling reason to warrant a sentence reduction." It further takes the position that " Dr. Johnson's rehabilitation " does not rise to the level of extraordinary and compelling, as it is the baseline of what is expected from every inmate...Prisoners are supposed to follow the rules, take classes, work a job, and otherwise attempt to improve themselves...The Court recognizes that there could be truly extraordinary instances of rehabilitation, such as a defendant who risks his life to help his fellow inmate...Johnson's circumstances of rehabilitation are like every other inmate and not extraordinary or compelling to warrant sentence reduction." Government's Response, p.22

Dr. Johnson rebuts this entire position on multiple grounds. In section 5, "Medical Circumstances and Exemplary Rehabilitation", p. 41-43, Dr. Johnson provides multiple instances of evidence and actually states in the motion "Though some things are expected of all inmates such as not incurring any disciplinary infractions, of which Dr. Johnson has a clear record, taking prescribed Programming classes, of which he has graduated from multiple, he has excelled and gone above and beyond the expectations placed on the inmate population." In contrast to the "base line expectation" the Government categorizes, every inmate is not expected to create Programming classes or become teachers of those Programming classes. The BOP does not offer collegiate programs above Associate and Bachelor degrees. In fiscal year 2023 the BOP facility where Dr. Johnson is housed, graduated forty-five G.E.D. students out of a population of one thousand, one hundred fifty. Associate and Bachelor degrees only counted for seven. Dr. Johnson is the exception to this rule by attaing his Doctorate and being the only one to do so in the entire Mid-Atlantic Region.(Information provided by FCI Ashland Education Supervisor). This was detailed in the motion. The Government...

9

cites "The Court recognizes that there could be truly extraordinary instances of rehabilitation, such as a defendant who risks his life to help his fellow inmates..." Govt. Response, p.22, yet ignores the fact that Dr. Johnson did exactly just that by detailing in the motion his saving of a fellow inmate who was having a stroke and seizure and his being commended by the BOP staff for his actions. As it has been stated in the motion, it is again reiterated in this Reply, that unlike the majority of inmates, Dr. Johnson has no incentive to participate in base level activities such as Programming, where FSA credits may be earned to reduce time served, because he is inelgible by Congressional statute barring those convicted of 18 U.S.C. § 924(c) and 111(b). His only incentive has been significant efforts towards post conviction rehabilitation. A variety of circumstances that serve as evidence of rehabilitation above the "base level expection of every inmate" has been provided to the court. The Court should be made aware that these activities and achievements, Dr. Johnson endured the processes associated with his deteriorating health and the subsequent medical procedures. Dr. Johnson's rehabilitation in combination with the other grounds for this motion defined under USSG 1B1.13 constitute extraordinary compelling reasons.

E. <u>Dr. Johnson Is Not A Danger To The Community</u>

The Government asserts as a basis for its opposition of the motion that Dr. Johnson is a danger to the community today. Dr. Johnson rebuts the Government's position that he is a danger to the community pursuant to Title 18 U.S.C. § 3142(g). The Government's prima facie position is totally unsupported by the record and evidence presented to this court by Dr. Johnson In determining whether an individual is a "danger to the community", § 3142(g)(3)(A) directs "The judicial officer shall...take into account the available information concerning--(3) the history and characteristics of the person, including--(A) the person's character, physical and mental condition, family ties, past conduct, history relating to drug or alcohol abuse, criminal

10

history, employment, financial resources, length of residence in the community, community ties, and record concerning appearance at court proceedings The Government has provided no evidence within the areas listed that is current as of today and instead chose to make this declaration based soley on the positions it stated during the trial prior to this sentence. The Government's assertion that "Dr. Johnson has a history of violence with firearms" is again not in harmony with the record. As Dr. Johnson's Pre Sentence Report from 2022 clearly indicated, the crime for which he is currently serving this sentence for is his first and only conviction for an offense involving a firearm. It also states his Criminal History Score is Zero, meaning he has no criminal history. This would not be the case if he had a "history of violence with firearms." As stated in the motion, the PSR details an incident from 21 years ago that resulted in a fine, no incarceration, for trespassing while serving in the U.S. Military. This was followed by 17 years of clear conduct as a law abiding citizen and a legal owner of firearms.

To address the elements required for the court to make a determination of whether Dr. Johnson poses a current danger to the community, as required by U.S.C. § 3142(g), Dr. Johnson submitted section 7, "USSG § 1B1.13(A)(2) Lack of Danger To Community Determination", p. 53-55. Here the motion points out " Under the provisions of § 3142(g), Dr. Johnson was not considered a threat then to anyone or to the community and was allowed to remain free for two years on pre-trial release, where he complied with all conditions and had no violations." It is further stated, "Dr. Johnson's lack of being a threat to anybody or to the community is further reinforced by the volume of letters submitted to the Court from the community today pledging support of Dr. Johnson after the granting of this compassionate release (EXHIBIT 43)." The Government again misinterprets these letters as a basis for a claim of extraordinary and compelling reasons, which they are not. They are presented as proof of the lack of danger from Dr. Johnson to the community. A community that instead would welcome him and assist him with a sucessful reintegration into society.

11

### F. Dr. Johnson Never Said That

The Government asserts that "Johnson asserts that his sentence should be reduced to time served because his incarceration during the COVID-19 in combination with his heart surgery, high blood pressure and high cholestrol places makes him highly vunerable to infectious diseases." Govt. Response, p.19. The Government thenproceeds to make an extensive argument regarding prison conditions during the pandemic. Dr. Johnson never made this assertion and it is not one of the basis for his claims. There is no correlation between those two chronic conditions (hypertension and hyperlipidemia) and the risks posed to Dr. Johnson. A very detailed explanation of what endocarditis is, what causes its onset, the susceptability of those with mitral valve implants, and its 100% fatality rate was provided in the Motion, section 4, part N, "Elevated Risk of Infectious Agent Exposure With Fatal Consequences",p. 22-23. Evidence was submitted indicating the actual outbreaks of the two most infectious bacteria in Section 4, part S.,"Dr. Johnson Housed In high Risk Environment With Ongoing Infectious Disease Outbreaks", p. 28. Dr. Johnson specifically addresses why COVID-19 is not a primary threat in his motion when it is stated "The risk from COVID-19, though a significant risk in itself, is not even the primary threat in this instance." Section 4, part W. "Four Grounds That Dr. Johnson Meets USSG 1B1.13 (1-4) Extraordinary And Compelling Definitions", p.40. There is no need to reply to this argument by the Government because the assertion was never made by Dr. Johnson

### G. A De Novo 3553(a) Analysis Supports Release

Dr. Johnson submitted a de novo 18 U.S.C. § 3553(a) anlysis that addressed all of the factors outlined in the statute in Section 6,"Impact of Extraordinary And Compelling Reasons On De Novo 18 U.S.C. § 3553(a) Analysis",p. 49-52.

Though charged and convicted of an offense that on its prima facie is categorized as a Crime of Violence, Dr. Johnson's conduct was not violent. This does not detract from the seriousness of the offense as Dr. Johnson has stated in Section 6 above. Dr. Johnson has accepted responsibility and expressed remorse for his actions both before and after the sentence.

12

Dr. Johnson does not have a history of being an advocate of violence nor does he have a history of violent rhetoric towards law enforcement. The Government's exaggerated opinion based on Dr. Johnson's irresponsible exercise of his First Amendment Rights during the world's revulsion of the death of George Floyd, is baseless, taken out of context, and a misleading characterization. Dr. Johnson was not prosecuted for violent rhetoric or being a domestic terrorist. The Government's attempt at a 3553(a) factor analysis misses the mark in it's failure to consider those factors de novo. As Dr. Johnson presented in the Motion," When considering the 3553(a) factors, the district court "must not only account for the circumstances of the time of the original offense but also for significant post-sentencing develoments." such as the defendant's rehabilitation efforts. United States v. Mangarella, 57 F .4th 197, 203 (4th Cir. 2023)...Courts have found that sentences subject to mandatory minimums could be reduced once a court finds that extraordinary and compelling reasons warrant a sentence reduction. See United States v. Williams, No. 09-cr-558 (CM), U.S. Dist. LEXIS 129978, 2023 WL 4785286, at *6-7", Motion p. 44, 48.

Dr. Johnson has presented a volume of cases with similar health conditions but much worse offenses and extensive criminal histories that were granted compassionate releases. Some who had even become fugitives from the law and committed such heinous acts as murder. The Government has cited such cases to bolster its position of those having health problems were denied. Dr. Johnson is not a repeat offender with a lengthy history of convictions, periods on parole, or sentences served in prison as his PSR reflects. The de novo 3553(a) analysis made available to the Court considers every factor listed in the statute. Prior to his rehabilitation record which is presented in conjunction with the medical reasons defined in USSG § 1B1.13, Dr. Johnson has a long history of legitimate employment, working steadily in multiple high paying fields, served seventeen years in the U.S. Armed Forces, is a former Presidential Candidate of the United States, has longstanding ties to the community where he is well respected and supported.

### G. BOP Medical Records Contradicts Government's Position

The Government's assertion that Dr. Johnson is receiving adequate healthcare from the BOP for all his chronic conditions and for his prosthetic heart valve device, based on his medical records provided by the BOP, is premised on its misapprehension of the basis of the chronic condition that places him at a high risk and the inability to recognize the continuing failure of the BOP to provide the specialized healthcare that recipients of prosthetic valve implants require for the rest of their lives.

The Government implies that the 620 page comprehensive medical record provided by the BOP proves that Dr. Johnson is receiving the adequate healthcare in a timely manner. The fact is this is a comprehensive "record dump" of every type of medical encounter that all inmates have with the BOP medical staff. This record includes every dental, vision, hearing, drug testing, DNA collection, and other multiple functions that the BOP performs on all inmates. Without this clarification, it is easy to imply that a great deal of treatment has been and is being done to address the issue at question. However, a screening of these same records to sift for the records relevant to Dr. Johnson's claims exposes the following facts that support the motion and contradict the Government's position and the statement of current status submitted by the BOP.

The Government chose to highlight select dates in the medical records between September 2023 and August 2024 (Govt Rspns p. 11-18) and states that Dr. Johnson was diagnosed with only "Mitral Valve Sufficiency". However the medical records reflect that the BOP and KDMC had diagnosed Dr. Johnosn with Mitral Regurgitation after performing tests in March 2023 (EXHIBT 50) and then performed progressively invasive procedures in an effort to determine the severity and causes of his detriorating health. The records indicate that Dr. Johnson's condition progressed from Moderate to Severe in July 2023 and that more invasive testing was needed to make an accurate

diagnosis so that a plan could be formulated to address the issue.(EXHIBIT 52.). Though Dr. Johnson indicated to the BOP in January 2023, at his initial health screening that he had a history of hypertension (EXHIBIT 53) and that condition is mentioned in his PSR, the other conditioons listed as Current in the BOP medical records (Hyperlipidemia, Meniere's Disease, Nonrheumatic Mitral valve Disorder, Mitral Regurgitation, Mitral Valve Sufficiency, Periapical Abscess, and Gastro-esophogeal reflux disease) (EXHIBIT 54) all developed within the six month period preceding the final diagnosis and prognosis delivered to Dr. Johnson on Sept. 8, 2023 by the cardiologists at KDMC (EXHIBIT 55 )and (EXHIBIT 56). Dr. Johnson was informed by Dr. Listerman that the severity of his heart condition mandated two surgical operations, the implantation a prosthetic valve device, and the use of blood thinners for the rest of his life afterwards. Without these steps his prognosis was projected at 24 months. (EXHIBIT 55). Dr. Johnson agreed with this plan and steps were set in motion to accomplish this. Information was provided in the motion from medical experts verifying the fatality of failure to have the surgeries. "People who have severe mitral regurgitation but dont have their valve repaired face poor outcomes. They have a 20% chance of dying within one year and a 50% chance of dying within five years."

    https://www.clevelandclinic.org/health/diseases/172-mitral-valve-

      prolapse  Cleveleand Clinic June 4, 2022 (Motion p.15)

The BOP Classification For Medical Health (2019) lists those conditons that automatically defaults and inmate from Care Level 2 to 3or 4. EXHIBIT 60 This policy meant that Dr. Johnson should've been reclassified and transferred to an FMC when he received the diagnosis and orders were placed for the cardiac surgeries. Evidence that Dr. Johnson was being transferred after his second surgery was submitted with the motion (EXHIBIT 57. The transfer was canceled and the BOP provided none of the prescribed aftercare. The BOP continues to to not provide the specialized long term healthcare required while still keeping him in an environment with outbreaks of diseases fatal to him.

The medical records reflect the time period between January-February 2024 when the BOP attempted to address the complaint filed by Dr. Johnson after his prosthetic valve implant operation. The record shows that attempts at managing Dr. Johnson's recovery were abandoned with a promise of getting cardiotherapy via video sessions that never happened (EXHIBIT 58). Dr. Johnson's inquiriy into the prescribed four week follow up with KDMC was answered with a follow up eight weeks later (EXHIBIT 59). The remainder of the medical records reflect visits to FCI Ashland's medical section that Dr. Johnson initiated to complain of his conditons, lack of cardiotherapy, concerns over his not receiving the specialized care, and resulting promised consultations. The records show decisions made by FCI Ashland for appointments with nurology, ENT, cardiology, and fitting of a heart monitor of which none have happened yet. The records show Dr. Johnson being given medications for some of his chronic conditions but not all of them. The records confirm Dr. Johnson's final self initiated visit to the FCI Medical on August 8, 2024 to complain again. There have been no follow ups by the medical staff since. The response to the Governmen on September 4, 2024 from the administrator is a repeat of the same outdated pre-packaged statement used in the initial denial of Dr. Johnson's request that precipitated the Motion. This statement is patently false and misleading and demonstrates the BOP's continuing deliberate indifference to matters of this magnitude. The medical records support Dr. Johnson's claims and contradict the Government's position.

## Conclusion

Dr. Johnson has demonstrated that the claims raised in the Motion For Compassionate Release are grounds meeting the definitions of extraordinary and compelling reasons as defined by the United States Sentencing Commission's Guidelines effective November 1, 2023. His prosthetic heart valve implant leaves him suceptible to endocarditis which is 100% fatal and caused by highly contagious infectious agents currently affecting his facility. This same prosthetic device requires the administration of the blood thinner...

Warfarin to prevent the onset of a thromboembolism which would result in a fatal event. This specialized treatment and required weekly blood testing that goes along with it is not being provided by the BOP. Dr. Johnson is not expected to recover from the Mitral Regurgitation or the Mitral Valve Sufficiency. This is a life long condition. Dr. Johnson has not received the required cardiotherapy nor are the efforts by the BOP provided in the prescribed timeliness. Dr. Johnson satifies the grounds for extraordinary compelling reasons under USSG § 1B1.13 sections (b)(1)(i);(b)(1)(c);(b)(1)(D); and in conjunction with his exemplary rehabilitation record (b)(5).

Dr. Johnson's extraordinary and compelling reasons do in fact warrant a reduction that is consistent with applicable policy statement issued by the USSG pertaining to compassionate release. Dr. Johnson has presented evidence that he is not a danger to the community in accordance with 18 U.S.C. § 3142(g) and USSG § 1B1.13(a)(2). A de novo analysis of the 18 U.S.C. § 3553(a) factors warrants a release. Dr. Johnson has presented a solid release plan that has him residing with a law enforcement officer and a support network to assist him with his medical needs and reintegration into society. The positions of the U.S. Government are based on a misapprehension of the Motion and a reading of the medical records provided. Dr. Johnson respectfully requests that the Court grant this Motion For Compassionate Release under the terms of the Proposed Order attached.

Respectfully Submitted

JOHN F. JOHNSON
Pro Se

———————————

John F. Johnson
#20257-509
FCI Ashland Federal Correction

## CERTIFICATE OF SERVICE

I, John F. Johnson, declare:

That I am a citizen of the United States, that I am over the age of 18, and a resident of West Chester, Ohio. I am serving a copy of:

Reply To Response Opposing Motion For Compassionate Release And Exhibits

Service was:

Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

DR. JOHN F. JOHNSON #20257509

FCI ASHLAND FEDERAL CORRECTION INSTITUTION

P.O. BOX 6001

ASHLAND, KENTUCKY 41105

This Certificate is executed on October 8, 2024 at Ashland, Kentucky. I certify under penalty of perjury that the foregoing is true and correct.

JOHN F. JOHNSON

DR. JOHN F. JOHNSON #20257-509
FCI ASHLAND FEDERAL CORRECTION INSTITUTION
P.O. BOX 6001
ASHLAND, KENTUCKY 41105



FILED
JAMES J. VILT, JR. - CLERK
OCT 21 2024
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

CLERK OF COURT
GENE SNYDER U.S. COURTHOUSE
601 WEST BROADWAY
SUITE 106
LOUISVILLE, KY 40202-2238



9589 0710 5270 1308 4066 14